RICHARD CLOTHING MFG. COMPANY *vs.* GUTSTEIN-TUCK, INC., & another.

Suffolk.    November 8, 1951. — February 6, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Landlord and Tenant,* Construction of lease.

A general provision in a lease of business premises for the sale of merchandise at retail and at wholesale, that upon notice from the lessor the lessee should cease to sell and should prevent any sublessee or other person from selling merchandise at wholesale on the premises, was controlled by a special provision added to the lease by a rider attached at the time of its execution, that the lessee should have the right to sublease a certain portion of the premises, "for the purpose of manufacturing pants and selling the same at retail and/or wholesale," to a specified concern engaged in manufacturing pants and selling them at wholesale only, and was inapplicable to and did not preclude sales at wholesale by such sublessee.

BILL IN EQUITY, filed in the Superior Court on February 20, 1951.

The suit was heard by *Donahue,* J.

*H. N. Silk,* (*M. A. Greenbaum* with him,) for the plaintiff.

*E. L. Schwartz,* for the defendant Gutstein-Tuck, Inc.

*D. Burstein,* for the defendant Hopkins Building Corporation, submitted a brief.

RONAN, J.    This case is here on appeals by the plaintiff and by one of the defendants, Gutstein-Tuck, Inc., from a decree entered in a suit brought under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for the interpretation of a lease given by the defendant Hopkins Building Corporation to the plaintiff and a sublease given by the latter to Gutstein-Tuck, a partnership, the predecessor of the defendant Gutstein-Tuck, Inc.[1]   The decree in the Superior Court declared that Gutstein-Tuck, Inc., was violating the terms of its sublease in selling merchandise at whole-

---

[1] No issue was raised at any time as to its right to hold the sublease.

sale on its demised premises, enjoined it from further sales, and declared that the plaintiff was entitled to enter and put an end to the lease if Gutstein-Tuck, Inc., did not desist within thirty days from continuing sales. The decree also provided that if the plaintiff did not prevent Gutstein-Tuck, Inc., from continuing such sales within sixty days, Hopkins Building Corporation would be entitled to enter and terminate its lease with the plaintiff.

The plaintiff was engaged in the business of manufacturing and selling men's clothing at retail on a so called "factory to you" plan. In March, 1948, it opened on a trial basis a place of business upon the premises owned by Hopkins Building Corporation, hereinafter called Hopkins. After a series of negotiations the plaintiff, hereinafter called Richard, and Hopkins executed a lease on May 28, 1948, for the term of ten years at an annual rental of $10,000 and an additional rental of seven per cent of its retail sales in excess of a certain amount. The lease contained the following provision: "The lessee shall use the demised premises for the purpose of selling goods, wares and merchandise thereon and therefrom at retail and at wholesale, whether or not manufactured by it on said premises, and covenants and agrees to exert every reasonable effort to promote and effect sales at retail on or from the said premises. . . . The lessee further covenants and agrees that within thirty (30) days of receiving from the lessor written notice to so do it will itself cease to sell, and will prevent any other person, firm or corporation (whether as sublessee, licensee, concessionaire or however operating) from selling goods, wares and merchandise at wholesale on or from said premises, it being mutually agreed that these provisions are for the purpose of enhancing sales at retail as to which the 'additional rental' as hereinafter provided is applicable and to prevent the use of said premises for sales at wholesale to an extent deemed by the lessor inconsistent therewith."

Richard had carried on negotiations to sublet a portion of the Hopkins premises to Gutstein-Tuck, hereinafter called Tuck (whether doing business as a firm or a corporation),

in the event that Richard obtained a lease from Hopkins.
Tuck manufactured men's pants and sold them to jobbers
and retailers. It also did some contract work manufactur-
ing pants from the cut material which had been sent to
make up the pants. It made no sales at retail. All branches
of its business were done in one factory. Richard was fa-
miliar with Tuck's method in conducting its business. It
may be assumed that it would be an advantage to Richard
if Tuck became a sublessee. Richard had drafted the sub-
lease which Tuck alone signed on May 24, 1948. This lease
was for the term of five years with an option for five years
more and called for an annual rental of $6,000 and a de-
duction of $1,000 if a certain change was made by mutual
consent in the space to be occupied by Tuck. This sub-
lease also provided that the demised premises were to be
used "for the purpose of manufacturing pants, only, and
the lessee guarantees that there will be no retail business
carried on here."

When Richard met with an officer of Hopkins and its
attorney on May 28, 1948, to execute the lease, a rider was
drafted by the attorney, attached to the lease, and initialed
by the parties, and the lease was executed. This rider read
as follows: "The lessee shall have the right to sublet to
Gutstein-Tuck Co. the third floor and a portion of the
second floor of said building for the purpose of manufactur-
ing pants and selling the same at retail and/or wholesale,
the sublessee not to have the right, however, to sublet under
or to assign the said sublease." Richard, after the head
lease was signed, executed the sublease, and Tuck moved
in and has since continued manufacturing men's pants
which it sells at its factory to jobbers and retailers. No
goods are sold at retail. Most of its orders come from travel-
ling salesmen. Others come by mail or telephone. A few
orders come from local buyers who occasionally come to the
factory. Tuck has no other place of business.

Hopkins on January 30, 1951, notified Richard that Tuck
was selling goods at wholesale and demanded that Richard
stop such sales, otherwise Hopkins would be entitled to

enter and terminate the lease. Richard in turn notified Tuck to discontinue such sales by a certain date or its tenancy would end.

All the parties agree that the sales made by Tuck of its manufactured product are sales at wholesale. *Commonwealth* v. *Poulin,* 187 Mass. 568. *Commonwealth* v. *Greenwood,* 205 Mass. 124. The sole question between Hopkins and Richard is whether these sales by Tuck are in violation of the head lease. Hopkins contends that it has the right to compel Richard to ban these sales at wholesale as Hopkins deems such sales to be inconsistent with its purpose of increasing retail sales. Richard and Tuck contend that the sublease does not come within the provision of the lease authorizing Hopkins to prevent sales at wholesale.

The lease from Hopkins to Richard must be construed as a whole, giving to the words their natural and usual meaning in the light of the circumstances in which they were employed in order to ascertain the intention of the parties. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113, 117. *King Features Syndicate, Inc.* v. *Cape Cod Broadcasting Co. Inc.* 317 Mass. 652, 654. The provision contained in the rider giving Tuck as sublessee the right, so far as Hopkins was concerned, to make sales at wholesale must be construed with the provision authorizing Hopkins to forbid sales at wholesale, *Ball* v. *Wyeth,* 8 Allen, 275; *Weeks* v. *Wilhelm-Dexter Co.* 220 Mass. 589; *Codman* v. *Hygrade Food Products Corp.* 295 Mass. 195, and must be given a rational meaning and, if possible, reasonable effect in carrying out the purpose of the lease. *Ginsburg* v. *Jacobson,* 276 Mass. 108. *Malden Knitting Mills* v. *United States Rubber Co.* 301 Mass. 229. The right of Tuck to make sales at wholesale stems from a special provision in the head lease. It was added to the lease after a draft of it was thought to be complete.

This general provision limiting sales at wholesale did not apply to sales by Tuck. The rider not only defined the space Tuck should occupy in conducting its business but

also permitted it to dispose of its product by selling it at wholesale upon the premises. The rider did not fix the term of the sublease and Richard could sublet to Tuck for any period within the ten year term which Richard had acquired under its lease. In fact, the term of the sublease was for five years with an extension of five years at the option of Tuck. It is a fair inference that the rider was added at the suggestion of Richard which had in its possession the sublease executed by Tuck but not by Richard until Hopkins authorized the giving of a sublease. Both Richard and Hopkins could hardly have expected that Tuck would set up a going business in a new location if the normal conduct of its business was to be seriously interrupted by preventing it by a thirty day notice from disposing of its goods at its factory and requiring it to secure new selling quarters. So far as Hopkins was concerned, the right of Tuck to sell at wholesale was to continue so long as it, as sublessee, occupied the premises in manufacturing pants. The right to sell was not subjected to any thirty day notice as provided for·in the general provision of the head lease limiting sales at wholesale. The purpose of the rider was to exempt sales by Tuck from the broad limitations upon sales at wholesale, expressed in another provision of the lease which applied to such sales in general. The special provision is inconsistent with the general provision and controls the latter in so far as concerns the particular matter contained in the rider. *Weisberg* v. *Hunt*, 239 Mass. 190. *Stanton* v. *Guaranty Liquidating Corp.* 14 Cal. App. (2d) 716. *Olson* v. *Rossetter*, 330 Ill. App. 304. *Ehnes* v. *Hronis*, 127 N. J. L. 551. *Wilson & English Construction Co.* v. *New York Central Railroad*, 240 App. Div. (N. Y.) 479. *Philadelphia* v. *Philadelphia Transportation Co.* 345 Pa. 244. Williston, Contracts (Rev. ed.) § 619. Restatement: Contracts, § 236 (c).

The existence of any intention upon the part of Hopkins that Tuck be so limited is negatived by the clear and direct phraseology of the rider to the effect that Richard shall have the right to sublet to Tuck for the manufacture of pants "and selling the same at retail and/or wholesale."

We do not understand that any actual controversy which is a prerequisite for the maintenance of proceedings for a declaratory decree, G. L. (Ter. Ed.) c. 231A, § 1, now exists between Richard and Tuck. The proceedings were evidently brought by Richard as a matter of self protection to avoid the termination of its lease with Hopkins in case it should be held that Richard violated its lease by not preventing Tuck from making sales at wholesale. In this court, Richard and Tuck each argued in favor of the right of Tuck to make these sales. Both joined in opposing Hopkins.

It might not be improper to say that, although the purpose for which Tuck was to use the premises was stated more narrowly in the sublease than in the head lease, it is plain that, upon grounds which in the existing circumstances need not be discussed, both Richard and Tuck intended that the sublease should give the sublessee the right to sell its product at wholesale upon the demised premises.

The final decree is reversed. A decree is to be entered with costs adjudging that the sales at wholesale by Tuck on the premises described in the rider attached to the head lease of the products manufactured there by Tuck do not constitute a breach of the head lease.

*So ordered.*