306 P.2d 287

**Paul K. MARSHALL, Appellant,**

**v.**

**Kenneth J. PATZMAN and Kathryn N. Patzman, husband and wife; and Hearon Realty and Mortgage Company, an Arizona corporation, Appellees.**

**No. 6156.**

Supreme Court of Arizona.

Jan. 15, 1957.

368

Darrow & D'Antonio, Tucson, for appellant.

Mesch, Kemper & Jasper, Tucson, for appellee Patzman.

Hall, Catlin & Molloy, Tucson, for appellee Hearon Realty and Mortgage Co.

PHELPS, Justice.

This is an appeal from a judgment in favor of defendants, Kenneth J. Patzman and Kathryn N. Patzman, his wife, and Hearon Realty and Mortgage Company, an Arizona corporation, and against plaintiff, Paul K. Marshall. Among other things, the judgment, in effect, declared a forfeiture to Patzman of all monies paid by Marshall on the purchase price of stock in the Bill Edel Motors, Inc. Marshall and Patzman will be hereinafter designated as such. The Hearon Realty and Mortgage Company as Hearon Realty and the Commercial Credit Corporation as Credit Corporation.

Marshall in April 1954, entered into a written contract with Patzman through Hearon Realty to buy 75 shares of stock of Bill Edel Motors, Inc., an Arizona corporation, referred to in the pleadings. as the Bill Edel Motors Co., and will hereinafter be referred to as the Motor Co. The total issue of stock outstanding was. 150 shares issued as follows: Patzman 74 shares, and his wife, Kathryn Patzman, 1 share; Edel 74 shares and his wife,. Laura E. Edel, 1 share.

The purchase price named in the contract is $12,500 which both parties claim in their pleadings and in their briefs to be the correct purchase price agreed upon. The contract was previously agreed upon by Patzman and Marshall and was reduced to writing by Hearon Realty at their instance and in their presence. After it had been written Marshall testified he read it; that he understood it, and that it recited what he thought it expressed. There is no evidence of a mutual mistake of fact as correctly found by the trial court. Patzman relies upon its terms as a defense. However, after stating the purchase price of the stock to be $12,500, the body of the contract provides for payment of $4,000 cash as earnest money to be applied on the purchase price; $4,002.68 to Commercial Credit Corporation, being the balance due on a loan of $10,000 by the Credit Corporation primarily to the Bill Edel Motors, and for which Patzman and wife, and Edel and wife, had pledged all of their stock in the Motor Co. as security. The stock was held by the Credit Co. as such security at the time the agreement to purchase was executed. Marshall was also to execute two notes in the sum of $2,500 each, due and payable respectively on November 1, 1954, and November 1, 1955; one note in the sum of $1,500 due and payable April 1, 1955, and one note in the sum of $2,000 due and payable April 1, 1956.

It takes but little mathematical ability to readily ascertain that the aggregate of these amounts required by Patzman to be paid as a consideration for the stock he contracted to sell to Marshall, is the sum of $16,502.68 and not $12,500 as claimed by the parties.

We believe it to be the universal rule of construction that where there is an inconsistency between general provisions and specific provisions of a contract that the specific provisions ordinarily qualify the meaning of the general provisions. Restatement of the Law, Contracts, Section 236(C). In State v. Commercial Casualty Ins. Co., 125 Neb. 42, 248 N.W. 807, 810, 88 A.L.R. 790, in construing the terms of a contract the court said:

"* * * It is a rule that, where there are general and special provisions in a contract, relating to the same thing, the special will control over the general provisions, and, if the contract is fulfilled according to the special provisions, the contractor has fully complied with the terms of his contract. * * *"

Richard Clothing Mfg. Co. v. Gutstein-Tuck, Inc., 328 Mass. 386, 103 N.E.2d 702, is to the same effect, citing cases from several jurisdictions. See also 12 Am.Jur., Contracts, Section 244 and Cum.Sup. same section.

It is therefore our view that the body of the contract specifically stating the various amounts exacted of Marshall, as payment for the purchase of said stock, being specific in its nature, is controlling and that as a matter of law, the consideration named therein for the purchase of said stock is $16,502.68. There is no merit to the argument of Patzman that the $4,002.68 paid by Marshall to the Credit Corporation was some kind of a condition of sale and therefore no part of the consideration.

There is likewise no merit to his argument that Patzman did not benefit as a result of Marshall's payment of said sum to the Credit Corporation. As above stated Patzman's stock in the Motor Co. was at that time held by the Credit Corporation as security for the payment of said sum of $4,002.68. His stock was liable for the full amount of said sum in the event of default in making monthly payments thereon. The Credit Corporation could have sold either Patzman's stock or Edel's stock, or both, to satisfy such indebtedness to it. Therefore, it cannot be said that Patzman did not benefit from Marshall's payment of such debt. He not only procured the release of his stock from the encumbrance against it but he procured its physical release to him, which was necessary in order for him to assign and deliver title to it to Marshall. The stock was delivered to him by the Credit Corporation and he had possession and control thereof and title thereto at the date of trial and the court committed reversible error in its conclusion of law to the effect that Patzman was not benefited by such payment.

We further hold that $8,002.68 or even $4,000 forfeiture as liquidated damages on a $16,502.68 total purchase price is unconscionable *under the circumstances of this case*. There isn't any showing that Patzman has suffered any damage whatever as a result of the breach by Marshall. Only approximately two weeks intervened between the execution of the contract and its breach. Marshall at no time either had possession or control of the stock or title thereto, and so far as the record discloses he did not participate in the operation of the business of the Motor Co. or receive any benefits therefrom.

We held in Tennent v. Leary, Ariz., 304 P.2d 384, that $1,500 was not disproportionate to any possible loss that might have been contemplated. The sale price in that case was $17,000. The seller there had agreed with the agent to pay him 50% of the $1,500 in the event the purchaser failed to perform, and the evidence further showed he later sold the property for $500 less than Tennent had agreed to pay for it.

In Weatherford v. Adams, 31 Ariz. 187, 251 P. 453, this court held that where a tract of farming land was sold in early 1919 and the purchaser went into possession and retained it until July, 1922, (more than three years) that 20% of the purchase price was proportionate to the damages but the land had depreciated several thousand dollars in value during that period.

In Perkins v. Spencer, 121 Utah 468, 243 P.2d 446, 449. Spencer sold a residence to Perkins for $10,500 and paid $2,500 down and agreed to pay the balance upon sale of his home in another city in Utah and agreed in the meantime to pay $75 per month as rental. In September following, Perkins had sold his home but was unable to pay all of the balance due. Spencer declared a forfeiture and brought an action for recovery of the property and for the forfeiture of the $2,500 paid to Spencer as a cash payment. The court said:

"'* * * such stipulation is, as a general rule, enforceable, if the amount stipulated is not disproportionate to the damages actually sustained.' * * *" (Citing a number of Utah cases.)

It also quoted Restatement of the Law, Contracts, Section 339, which is as follows:

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

The Utah court held that the amount was not a reasonable forecast of just compensation for the harm caused by the breach and that the damage suffered is not such as is incapable of accurate determination. It concluded by saying in substance, that the amount sought to be forfeited was unconscionable as liquidated damages and was instead a penalty. Utah is committed to the rule, just as we are, that a provision for forfeiture in a contract is enforceable if reasonable, otherwise, it is not.

For the reasons above stated the judgment is reversed and remanded with directions to the trial court to determine what damages, if, any, Patzman suffered as a result of Marshall's breach of his contract with him.

UDALL, C. J., and WINDES, STRUCKMEYER and LA PRADE, JJ., concur.