MARY C. HILLMAN *vs.* SECOND BANK–STATE STREET TRUST COMPANY, trustee, & others.

Worcester. September 22, 1958. — October 31, 1958.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Equity Jurisdiction*, Declaratory relief. *Declaratory Judgment. Equity Pleading and Practice*, Parties, Declaratory proceeding. *Trust*, Parties, Trustee's accounts, Advisor of trustee. *Words*, "May."

A petition in equity, by a friend of the deceased settlor against the trustee of an inter vivos trust providing that the trustee should annually furnish an account of the trust to the friend during the lifet'me of the settlor's child, the principal beneficiary of the trust and an insane

person under guardianship, and that the binding assent of the friend to an account should "be conclusively presumed . . . unless . . . [she should] within thirty days from the receipt thereof notify the Trustee . . . of refusal to assent," seeking a declaratory decree as to whether such provision respecting her assent was valid and effective, but alleging no refusal by the trustee to perform any duty or to grant any request made by her with respect to accounts, disclosed no actual controversy between her and the trustee which would entitle her to a decree defining her rights. [19]

Nothing in an inter vivos trust or in the general background of the trust or in the circumstances attendant upon its execution disclosed anything which required a construction of the word "may" as mandatory rather than as permissive where it appeared in a clause providing that the trustee in its discretion should pay to or apply for the benefit of the settlor's daughter such sums from income as it deemed for her best interest and in connection with paying or applying income "may" apply to a friend of the settlor for advice. [20–21]

A friend of the deceased settlor of an inter vivos trust, in which it was provided that the trustee in its discretion should pay to or apply for the benefit of the settlor's daughter such sums from income as it deemed for her best interest, that "in making said payments and application" the trustee "may" apply to the friend "for advice and shall be protected in acting upon such advice," that the trustee should furnish an account of the trust annually to the friend during the life of the settlor's daughter, and that the friend's assent thereto should be conclusive, had no standing to maintain a suit in equity for declaratory relief with respect to a dispute with the trustee as to the friend's rights under the indenture to be consulted about, and reimbursed for expenses of visits to, the settlor's daughter, an insane person under guardianship. [21–22]

PETITION, filed in the Probate Court for the county of Worcester on January 18, 1956.

The case was heard by *Rice*, J.

*Charles W. Proctor*, for the petitioner.

*Richard Wait*, (*James A. Crotty, Jr.*, with him,) for the respondents Second Bank-State Street Trust Company and others.

CUTTER, J. This is a petition for instructions, amended to include a petition for a declaratory decree, brought by Mrs. Hillman against the trustee of an inter vivos trust dated December 11, 1950. By article 2 of this trust indenture the settlor gave in trust to a predecessor of the Second Bank-State Street Trust Company (hereinafter called the trustee) substantial property in trust to "pay to or apply

for the benefit of the" settlor's daughter "such sums from income as it shall deem for her best interest and any sums not so paid or applied shall be accumulated." Article 2 of the indenture also (a) stated that "[i]n making said payments and application the Trustee *may* apply to . . . [Mrs.] Hillman . . . for advice and shall be protected in acting upon such advice," and (b) gave power to the trustee "in its sole and uncontrolled discretion" to expend "such sums from principal as it shall deem necessary" for the settlor's daughter in "the event that at any time the income . . . shall be insufficient to provide for . . . [her] comfortable maintenance and support" (emphasis supplied).

After the death of the daughter, upon terms and in shares not here relevant, $50,000 of the principal was to be paid to two nephews of the settlor, and $25,000 was to be held in trust for the settlor's sister for life and after her death for her son. All sums not thus disposed of were to go to named educational institutions.

The trustee was relieved by article 5 of the indenture from liability for acts other than wilful "misfeasance, gross negligence or dishonesty," and, by article 6, was directed to furnish an account annually to Mrs. Hillman during the lifetime of the settlor's daughter and thereafter to each person entitled to receive income. Article 6 further provided that the "assent of the person to whom each such account shall so be furnished shall be . . . conclusive as to all transactions therein shown . . . and such assent shall be conclusively presumed . . . unless . . . [such] person . . . shall within thirty days from the receipt thereof notify the Trustee . . . of refusal to assent."

The settlor's daughter was "an only child, a hopeless idiot from birth." At the time of the trial she was about forty-five years old and from "her birth . . . [had] been boarded out in some private home." Mrs. Hillman and her husband had been close friends of the settlor, then a widower, beginning in 1942. On various occasions prior to his death in 1952 the settlor had discussed with Mrs. Hillman the prob-

lem of the future care of his daughter in the event that any-
thing should happen to him.    There can be little doubt on
this record that he reposed confidence in Mrs. Hillman as a
friend, who was young enough to be likely to survive him.
He kept Mrs. Hillman informed of the progress made in
arranging the trust indenture and frequently mentioned his
desire that Mrs. Hillman visit the daughter "at least once
a year."    During the later years of his life, the settlor saw
his daughter only occasionally.    Mrs. Hillman never saw her
until after the settlor's death.

By his will, allowed December 23, 1952, the settlor made
two bequests (one of $10,000 and one of $25,000) to Mrs.
Hillman "in recognition of her kindness to my daughter."
Mrs. Hillman and her husband, early in 1953, filed in the
Probate Court a petition for the appointment of a guardian
of the settlor's daughter and asked that Mrs. Hillman be
appointed.    After a hearing, the court, on November 8,
1954, appointed a Mr. Taylor as guardian and the appoint-
ment has been in effect ever since.

Mrs. Hillman in February, 1954, went to Florida to
visit the place in which the settlor's daughter lived.    She
went again in 1955.    Her bill for expenses on the 1954 trip
was paid by the trustee.    No later bill, if any was pre-
sented, was paid.    After the guardian was appointed in
late 1954, the trustee took the position that the trustee
should not pay Mrs. Hillman's expenses for visits to the
settlor's daughter.

Mrs. Hillman brought the present petition, which, as
amended, alleged in general terms the existence of a con-
troversy between her, on the one hand, and the trustee and
the guardian on the other hand "in regard to the matters
in which" interpretation was sought.    It also asked for an
interpretation of the trust indenture with respect to her
right (a) to make visits to the settlor's daughter; (b) to be
reimbursed from the trust fund for the expenses of such
trips; (c) to be reimbursed for the expenses of securing
advice from investment counsel with respect to the trust
investments; and (d) to investigate the trust records of

securities. She also sought declarations whether article 6 is a "valid provision" and whether she is limited to a period of thirty days in which to approve accounts. The petition, with respect to the investment management of the trust, alleged (apart from allegations about the language of the indenture) merely that the amount of the trust corpus is about $200,000, that the trustee annually submits to her a statement showing the disposition made of the income of the trust during the preceding year, that the trustee "has not in the past and does not now follow the suggestion contained in . . . the trust instrument" that it may apply to Mrs. Hillman for advice, and that it has at no time consulted her about "the purchase or sale of securities."

After hearing the court entered a decree dismissing the petition and filed a report of material facts which recites most of the circumstances already set forth. The court concluded that, by the indenture, "the trustee was given the widest of discretion," that it is "under no obligation to seek any advice from" Mrs. Hillman, that the provision in the trust indenture (permitting the trustee to seek advice) is "merely permissive and optional," and that the trustee's obligation with respect to accounts "is satisfied when it furnishes to" Mrs. Hillman, during the life of the settlor's daughter, a copy of its account. Mrs. Hillman has appealed. The evidence is reported.

1. Mrs. Hillman was clearly not entitled to have any declaratory decree defining her rights under article 6 with respect to accounts. She has alleged no facts sufficient to show the existence and nature of any present or immediately anticipated actual controversy with the trustee under article 6, or any refusal by the trustee to perform any duty, or to grant any request made by her, with respect to accounts. G. L. 231A, § 1. See *School Comm. of Cambridge* v. *Superintendent of Schs. of Cambridge*, 320 Mass. 516, 518; *Richard Clothing Mfg. Co.* v. *Gutstein-Tuck, Inc.* 328 Mass. 386, 391; *Povey* v. *School Comm. of Medford*, 333 Mass. 70, 71. See also *Young* v. *Jackson*, 321 Mass. 1, 7.

2. There are allegations in the petition which somewhat

ambiguously assert a present dispute between Mrs. Hillman and the trustee, with respect to Mrs. Hillman's rights, if any, under article 2, to be consulted about the settlor's daughter and to be reimbursed for her expenses in visiting the daughter. Even assuming, however, that this dispute constitutes a "controversy" under G. L. c. 231A, § 1, there is serious question whether this petitioner has any standing or interest sufficient to enable her to seek declaratory relief with respect to this dispute. See *Povey* v. *School Comm. of Medford*, 333 Mass. 70, 71; *Cabot* v. *Assessors of Boston*, 335 Mass. 53, 57. See also discussion in *Kaplan* v. *Bowker*, 333 Mass. 455, 459.

The trust indenture could hardly state more clearly the trustee's duties with respect to consulting Mrs. Hillman. Article 2 says that the trustee *"may* apply" to her "for advice and shall be protected in acting upon such advice" (emphasis supplied). "May" as used in this sentence of article 2 seems clearly permissive and not mandatory. The settlor knew how to distinguish between mandatory directions and grants of permissive authority to the trustee. In article 6, where he imposes a duty upon the trustee to furnish accounts, the word "shall" is employed rather than "may," as in article 2. *Hampden Trust Co.* v. *Leary*, 186 Mass. 577, 581. See *Loring* v. *Clapp*, 337 Mass. 53, 67–68; *Welch* v. *Phinney*, 337 Mass. 594, 598. This is not an instance where "may" is to be construed as "shall" under circumstances like those considered in *Attleboro Trust Co.* v. *Commissioner of Corps. & Taxn.* 257 Mass. 43, 51–52, where "may" appeared in a statute giving power "to public officers and the public interest or individual rights call for its exercise." This is also not a case where the general context of the provision indicates that "may" is not to be construed as having its usual meaning or that it imported a mandatory requirement. See *National Contracting Co.* v. *Commonwealth*, 183 Mass. 89, 93; *Hampden Trust Co.* v. *Leary*, 186 Mass. 577, 581; *Brennan* v. *Election Commrs. of Boston*, 310 Mass. 784, 786. Since nothing in the instrument supports such a mandatory construction, we see no reason

to look behind the plain language of article 2. However, our examination of the reported evidence, which need not be summarized here, discloses nothing in the circumstances attendant upon the execution of the indenture or in the general background which would require that "may" be construed as "shall."

We have considered whether the requirement of article 6, that copies of each account be given to Mrs. Hillman during the life of the settlor's daughter, in any way affects Mrs. Hillman's position under article 2. The provision of article 6 that the approval of a trustee's accounts by some designated beneficiary shall be binding is not unusual in trust instruments, although it is perhaps unusual to place such a power of binding assent in the hands of a third person, not a beneficiary. See Westfall, Nonjudicial Settlement of Trustees' Accounts, 71 Harv. L. Rev. 40, 76; Casner, Estate Planning (2d ed.) 909–911 and supp. Nevertheless, even if we assume (without deciding) that under such a provision the power to assent, or to withhold consent, to trust accounts must be exercised, by the beneficiary or other person holding it, not arbitrarily but with good faith (compare *Edelstein* v. *Old Colony Trust Co.* 336 Mass. 659, 663) and in a quasi fiduciary manner reasonably consistent with the trust purposes, the possession of the power does not make the person who possesses it a trustee, a party to the trust instrument, or even an adviser whose advice must be sought in advance, with respect to all matters affecting the trust.

Such power as Mrs. Hillman has under article 6 relates solely to a scrutiny of the trustee's formal account of his acts after the event and implies no right to be consulted by the trustee about any matter in advance. This is not a case where the settlor has provided that certain acts shall not be done without first obtaining the consent of a named person, as in certain cases relied upon by Mrs. Hillman such as *Gathright's Trustee* v. *Gaut*, 276 Ky. 562, 564–565; *Rolston's Estate*, 162 Misc. (N. Y.) 194, or where there is a mandatory obligation resting on the trustee to consult a beneficiary. See *Erwin's Estate*, 117 N. Y. S. 2d 871 (Surr. Ct. N. Y.).

Since article 2 provides no function for Mrs. Hillman to perform until she is asked by the trustee for advice, we think that she has no standing to give it, until she is asked. There is here no allegation that the trustee has sought Mrs. Hillman's advice. Unless the trustee wishes to do so in its discretion, it has no obligation to do so. There are no allegations and there was no testimony showing any abuse of discretion. Indeed, since the appointment of a guardian of the settlor's daughter, the obvious person for the trustee to ask for advice would be the guardian appointed by the Probate Court at a time when Mrs. Hillman sought to be appointed. The trustee conceivably might find itself involved in unnecessary controversy and expense, if it were to look for guidance to anyone other than the guardian. Under the circumstances here alleged, we perceive no interest of Mrs. Hillman in the trust premises, no relationship to the beneficiary, and no position created by the trust instrument, adequate to give her standing to seek declaratory relief with respect to article 2. The petition was properly dismissed.

*Decree affirmed.*