* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7330. The matter was referred

edge or occasion to know that his brakes were faulty. Without this knowledge or notice he could not be negligent and, therefore, the judgment should be affirmed.

400 P.2d 859

**E. W. DEUEL, Appellant,**

v.

**Glenn A. McCOLLUM and George K. Rubel, Appellees.\***

**No. I CA–CIV I.**

Court of Appeals of Arizona.
April 15, 1965.

to this Court pursuant to Section 12–120.23 A.R.S.

Kenneth Biaett, Phoenix, for appellant.

John H. Dick, Chandler, for appellees.

CAMERON, Judge.

This is a suit by Glenn A. McCollum and George K. Rubel, the plaintiffs below, against E. W. Deuel, the defendant below, for breach of contract. Defendant counter-claimed, trial was held before the court without a jury, judgment was rendered against the defendant, on his counterclaim, and for the plaintiff in the amount of $3,558.43, plus $650.00 attorney's fees. From the judgment, defendant appeals.

Sometime in August, 1957, the parties hereto entered into negotiations for the subdivision of ten acres of land in Phoenix, Arizona, owned by the defendant Deuel. On or about 20 November, 1957, a contract dated 19 August, 1957, was executed by the parties. The contract was a printed form provided by plaintiffs as architects, and contained blank spaces which were filled in by typewriter, and had other portions crossed out. Paragraph A stated as follows:

"A. *THE PROJECT AND THE ARCHITECT'S SERVICES:* The Architect's professional services consist of the necessary conferences, the preparation of the preliminary sketches and studies, working drawings, specifications, large scale and full size drawings, for architectural, plumbing, heating & cooling, structural, electrical and other mechanical work; assistance in the drafting of forms of proposals and contracts; the issuance of certificates for payment; the keeping of accounts, the general administration of the business and supervision of the Work."

Then under *"Description of the Project"* the form had been filled in by typewriter with the following language:

"plan, design and develop a subdivision of 10 acres more or less (lot 9 Ambassador Heights, MCR, Phoenix, Arizona), prepare brochures, plan and design dwellings and appurtenant structures, and supervise construction thereof."

The contract provided for a retainer fee of $150.00 which was recited to constitute the minimum fee payable with the balance of the fee to be paid as follows:

"Architectural & Land Planning Fee, Total Design of Project less engineer-

ing fees and less individual dwelling design & supervision fees the amount of Three Thousand One Hundred ($3100.00) to be prorated into the release price of each lot at $100.00 per lot."

In case of abandonment of the project, the contract had the following provision:

"8. *Abandonment of the Project*—If the Owner abandons the Project, the Architect is to be compensated in proportion to the services performed under the Contract. If such abandonment occurs prior to completion of the preliminary stage of the Architect's services, the Owner shall pay to the Architect as his compensation, in addition to the minimum fee payable hereunder: (a) the Architect's cost of technical employee's salaries employed on the Project and for the time expended by partners on the project; plus (b) two hundred percent of (a) overhead and fee. Partner's time under (a) shall be calculated at the rate of $7.50 per hour. In the event of abandonment of the project, the Architect is to be reimbursed by the Owner for all expenses incurred or for which he is committed, including the cost of mechanical and structural engineers, planners, or consultants."

The contract defined the word "abandonment" as follows:

"ABANDONMENT: The word 'abandonment' shall mean the termination of the project or operations before completion."

In addition to the architectural services, the contract provided that the owner agreed to retain an engineering firm to perform required engineering services under the direction of plaintiff. The contract also provided for reasonable attorney's fees in the event the matter should be placed in the hands of an attorney for collection. From August, 1957, until June, 1958, several plats of the area in question were drawn, some changes were made, and a trust agreement was entered into with a trust company to provide for the payment of fees and other necessary arrangements should financing be obtained. The representative from the trust company indicates that there are letters from an insurance company, February, April and May of 1958, concerning the financing of the property, and questions concerning partial release clauses as well as an alleyway on the plat. Testimony also indicates that Mr. Rubel had conferences not only with the trust company and the engineering firm, but with the County Planning and Zoning Authority although a plat was never officially filed with the County. On or about 3 June, 1958, defendants notified plaintiff that he was cancelling said contract because of plaintiff's "breach and abandonment" thereof. Plaintiff sued and defendant counterclaimed. Defendant does not urge his counterclaim on appeal. Plaintiff treats the contract as completely performed, and bases his claim as follows: $3,100.00 as provided in the contract, $17.50 for soil test, and $424.00 for engineering services, plus $650.00 attorney's fees. It is apparent that a judgment was granted as and for a completed contract, plus certain costs allegedly incurred.

■ This case involves the interpretation of a contract entered into between the parties which contract appears conflicting on its face. Under these circumstances, the law in Arizona is as follows:

"* * * [I]t is the law that a special provision written into a contract will prevail over the general provisions thereof, Marshall v. Patzman, 81 Ariz. 367, 306 P.2d 287, and if the written provisions in a contract are inconsistent with printed provisions, the written matter deliberately added by the parties must prevail." Wilhorn Builders v. Cortaro Management Company, 82 Ariz. 48, at 51, 308 P.2d 251, at 252 (1957).

The words added to the printed contract in this case call upon the plaintiffs to "plan, design and develop a subdivision of ten

acres more or less * * * prepare brochures, plan and design dwellings, and appurtenant structures, and supervise construction thereof." The evidence below does not indicate that the contract was completed by the plaintiffs. In fact, the contrary is evident. The lower court had sufficient evidence to find the contract had been abandoned before completion by Deuel. We will look to the contract to see what remedies, if any, are available to the plaintiff in case of breach. We will not normally disturb a judgment of the trial court where there is reasonable evidence to support it, and under such circumstances the evidence will be taken in the strongest manner in favor of the court's decision. Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P.2d 617 (1960). While the evidence below is sufficient to indicate a breach of this contract by the defendant Deuel, and therefore substantiate a judgment for plaintiff, there is insufficient evidence to support the amount of the judgment rendered in behalf of the plaintiff in this matter. The amount rendered could only be awarded in the event the plaintiffs had performed all acts required under the terms of the written agreement and particularly the words typed in, which required them to do many more things than were admittedly done in this matter.

Where a contract provides for the remedy or the amount of damages in the event there is a breach, the terms of the contract will control. Green v. Snodgrass, 79 Ariz. 319, 289 P.2d 191 (1955). The contract herein provided that if the abandonment occurs prior to the completion of the preliminary stage of the architect's services, the owner shall pay to the architect, in addition to the minimum fee payable, the architect's cost of technical employee's salaries employed on the project, and for time expended by the parties on the project, plus 200% of the architect's cost for overhead fee, computed at the rate of $7.50 per hour.

The same paragraph provided that in the event of abandonment of the project the architect is to be reimbursed by the owner for all expenses incurred or for which he is committed including the cost of mechanical and structural engineers, planners and consultants. Although the contract does not expressly state it would indicate that this portion of the damages would be available only if the contract were abandoned after the completion of the preliminary stage of the architect's services.

The testimony is not sufficient to indicate whether or not this contract was abandoned before or after the preliminary stage of the architect's services, but the amount of damages due to the plaintiffs would certainly be dependent upon the time at which abandonment occurred.

Judgment for plaintiff is affirmed in part and reversed and remanded for a determination of the amount of damages.

STEVENS, C. J., and DONOFRIO, J., concurring.