493 P.2d 508

**THERMO–KINETIC CORPORATION, an Arizona corporation, Appellant,**

v.

**Boyd ALLEN, Appellee.**

**No. 2 CA–CIV 1070.**

Court of Appeals of Arizona, Division 2.

Feb. 8, 1972.

Rehearing Denied Feb. 29, 1972.

Review Denied April 4, 1972.

Laber, Morrow, Lovallo & Colarich, Ltd. by Albert Morrow, Tucson, for appellant.

Albert G. Gamble, Tucson, for appellee.

HOWARD, Judge.

This appeal arises from an action instituted by Mr. Allen for breach of an employment contract entered into between him and the appellant, defendant below. (The parties shall hereinafter be referred to as plaintiff and defendant.)

The defendant's pleading contained a general denial and affirmatively pleaded estoppel, waiver, and failure of consideration as defenses. Defendant also counterclaimed for an alleged malicious interference with its business relationship.

The case was tried to the court, sitting without a jury, and resulted in a judgment in favor of the plaintiff in the sum of $12,015 plus costs together with attorney's fees in the sum of $1,750. The defendant appeals raising numerous questions for review which essentially attack the sufficiency of the evidence to support the trial court's judgment.

Although defendant, in support of its position, sets forth minutiae of evidence, our review, in evaluating the sufficiency thereof, is confined to a consideration of that evidence most favorable to plaintiff's position.

Plaintiff was the sole owner of all of the outstanding shares of stock of Boyd Allen's Audio-Visual Center, Inc. On April 29, 1968, he and the defendant entered into a contract of sale for these shares of stock to the defendant. This contract also provided that the buyer and seller would execute an employment contract in conjunction therewith wherein the defendant would be the employer and the plaintiff would be the employee. The employment contract was entered into as agreed and it provided, *inter alia*, as follows:

"I

Employer does hereby employ and engage employee as as [sic] the business and sales manager of BOYD ALLEN'S AUDIO-VISUAL CENTER, INC., and Employee does hereby accept and agree to such employment and engagement under the following terms and conditions.

II

Employee agrees that he will, at all times, faithfully and to the best of his ability, experience and talent, perform all of the required and necessary duties and services that are customarily performed by a business and sales manager, and at this connection, the employee shall work during the regular working hours and days of his employment, and such additional hours as may be reasonably necessary, to be agreed upon by the employer and the employee.

III

The services and duties to be performed by employee shall be rendered not only at the principal place of business in Tucson, Arizona, but also in Phoenix, Arizona; it being contemplated by the parties that employee shall open a branch office in Phoenix, Arizona to service Maricopa County.

IV

It is also understood that employee shall be expected to provide services for the employer by traveling to and attending various conventions, conferences, meetings, and orientation sessions in the audio-visual field.

## V

The term of this agreement shall be for a period of five (5) years commencing April 26, 1968, and terminating April 25, 1973, subject, however, to prior termination as hereinafter set forth.

## VI

The employer shall compensate employee as follows:

A. The sum of Twelve Thousand ($12,000) Dollars per annum payable at the rate of One Thousand ($1,000) Dollars per calendar month; and

B. A sum equal to fifteen per cent (15%) of the net profit of BOYD ALLEN'S AUDIO-VISUAL CENTER, INC. before taxes; and

C. Such other sums as are necessary to reimburse or compensate the employee for business travel expenses as well as lodging, travel and reasonably necessary entertainment away from Tucson.

## VII

The employee further agrees that during the term of his employment, he shall devote his entire time, energy and skill to the service of employer and to the promotion of employer's business . . . .

\* \* \* \* \* \*

## XI

It is understood and agreed by and between the parties hereto that should employee be neglectful in the interest of employer or manage the business under his supervision in a poor or improper manner, or shall misconduct himself or be otherwise in the good faith opinion of the employer incompetent, negligent, or irresponsible, or in any way fail in his performance of the duties set and contemplated under this agreement, employer may terminate this agreement and the services of the employee hereunder after one (1) month's written notice to the employee.

## XII

In the event the employer shall wish to terminate this agreement for reasons other than the good cause as set forth in the immediately preceding paragraph; the parties hereby agree the employer shall pay to the employee as severance pay a sum equal to a year's salary.

\* \* \* \* \* \*"

The employment contract also provided that in the event of suit for its breach the prevailing party "may be awarded reasonable attorney's fees by the Court."

The trial court apparently concluded that Mr. Allen's employment had been terminated by the defendant for reasons other than good cause as described in Paragraph XI, supra, and therefore Mr. Allen was entitled to recover the sum agreed upon by the parties in Paragraph XII. Although plaintiff's annual salary was to be $12,000 plus a share of net profits before taxes, no proof was adduced as to profits, thus accounting for the limitation to the $12,000.[1]

Upon execution of the employment agreement, the plaintiff proceeded to render services to the defendant. He expended efforts both in the sales area and in attempting to acquire businesses related to the audio-visual business. Almost immediately following its acquisition of the business, the defendant hired one Opeal Moore and informed plaintiff that "she was going to run the business." It was unclear to the plaintiff what his specific duties were so he continued to exert his efforts on behalf of the defendant outside of the office in furthering its planned expansion, particularly in the Phoenix area. His activities were known to his employer and he was encouraged to pursue them during discussions with executive officers. During May and June of 1968, he concentrated his efforts in the northern part of the state with the view to establishing an office in Phoenix, expanding sales in the northern part of the state, and acquiring new businesses. According to Mr. Allen, he worked every

[1]. The additional $15 awarded to the plaintiff was the registration fee at a convention, an expenditure authorized by the employer but not reimbursed.

day and many nights during this two-month period in these varied activities.

At the beginning of July, with defendant's consent, the plaintiff took off on a six-week vacation, during which he attended the National Audio Visual Association Convention. The subject of vacation arose when the plaintiff suggested that, in view of the change in ownership, it would be a good idea to send a representative to the convention. He testified:

"Mr. Gibson explained that he didn't feel that they could afford to send a representative so I suggested 'well, how about me taking a vacation and I will cover the convention?' and he said, 'Well, that will be fine but you will have to do it on your own expenses.' I agreed to this and I said, 'I have a daughter in Florida I would like very much to have a chance to go see her. So I can swing around, cover the convention and go see my daughter and then come on back.'

He said, 'About how much time do you think you will need?' I said, 'Well, it will probably take about six weeks.' He said, 'That is fine.' He said, 'You will have to pay your own expenses but we will pay for the registration.' "

This conversation was verified by a letter from Mr. Gibson, chairman of the board of directors, dated July 2, 1968. The letter also stated:

"We will look forward to seeing you in the middle of August. I hope that you have a pleasant vacation, and we are looking forward to doing lots of business with you upon your return."

When the plaintiff returned to work on the 15th of August, he found that the offices had been moved. He went to see Mr. Gibson at the new offices "to find out what the new situation was." Mr. Gibson told him that he was no longer in the operational phase of the business and referred him to someone else who was not available. When he so informed Mr. Gibson, the plaintiff was directed to see another man. He made an appointment to see him and, despite numerous interruptions, they did have an opportunity to "talk shop." The plaintiff was told that he had expertise in the audio-visual field but that the defendant was not "in a position to pay for it." He was told that he would have to be on a commission basis to which he responded that this was not in accordance with the agreement and that it was not acceptable to him "just on an open and shut basis." In other words, according to him, he would have to negotiate to see what they meant. The plaintiff received the impression that the defendant was in need of sales but, at the conclusion of the meeting, he did not have a clear understanding of his duties.

During the next few days he made several attempts to have his duties clarified but without success. He returned to the executive offices of the defendant several times and informed the receptionist that he was desirous of discussing the situation with someone in executive authority but his efforts in this respect were unavailing. Each time he tried to see someone, after waiting around for some period of time, he would inform the receptionist that he would be at home if they needed him. No one ever attempted to contact him at home and he never received any notice, written or oral, of termination of his services. The defendant subsequently sold the business in October, 1968.

■■■ Defendant contends that if a contract calls for a certain period of notice of termination of employment, and a shorter notice than that stipulated is given or if an employee is discharged without notice, the employee cannot recover more than the compensation he would have been entitled to during the stipulated notice period. *See* Old Dominion Copper Mining & Smelter Co. v. Andrews, 6 Ariz. 205, 56 P. 969 (1899); Annot., 96 A.L.R.2d 272 (1964). We have no quarrel with this proposition of law but consider it inapposite to the facts of this case. The employment con-

tract provided for termination for delineated causes in the good faith opinion of the employer after one month written notice to the employee. An employer's right to terminate a contract is subject to the notice thereof designated in the contract itself. Mayflower Air-Conditioners, Inc. v. West Coast Heating Supply, Inc., 54 Wash.2d 211, 339 P.2d 89 (1959); 56 C.J.S. Master and Servant § 32(c), p. 418 (1948). Although concededly the conduct of the parties may constitute a waiver of the requirement of written notice of termination, the record does not even reflect oral notice. Notice of termination of a contract must be clear, positive and unequivocal. Shaw v. Beall, 70 Ariz. 4, 215 P.2d 233 (1950); 17(A) C.J.S. Contracts § 402, p. 488 (1963). Evasive tactics and equivocal references to sales being down and suggestions as to a commission arrangement can hardly be equated to notice of termination.

■■■ Defendant also contends that the plaintiff voluntarily abandoned his employment, thereby authorizing the defendant to rescind the contract and refuse to be bound by it. See 56 C.J.S. Master and Servant § 40(a), p. 424 (1948). Abandonment of a contract is a question of intention to be ascertained from all the facts and circumstances. Kolberg v. McKean's Model Laundry & Dry Cleaning Co., 9 Ariz.App. 549, 454 P.2d 867 (1969). The defendant argues: "The plaintiff failed to tender his services, did not know when and if he was discharged, never attempting to pin his employer down on the subject, and took a six-week vacation with full knowledge of the declining situation of the business and never made any genuine attempt to work thereafter, insisting that he was not aware of what his duties were contrary to the evidence and logic." The extent to which an employee must manifest his willingness to perform depends on the attitude and conduct of the employer. 56 C.J.S. Master and Servant § 65, p. 479 (1948). From the testimony presented, the trial court apparently concluded that plaintiff had not abandoned his employment and we believe there is evidentiary support for such conclusion.

■■ It is contended by the defendant that the parties to the employment contract altered or modified its terms and thus entered into a new contract which was neither pleaded nor sued upon. It is true that oral modification of a written contract can be accomplished when the parties mutually so agree. In re Estate of MacDonald, 4 Ariz.App. 94, 417 P.2d 728 (1966). However, the burden of proving such modification is on the one claiming modification. Hall v. Keller, 9 Ariz.App. 584, 455 P.2d 266 (1969). Suffice it to say that the defendant did not meet its burden in this regard. We summarily reject the defendant's contention that there was a failure of consideration in the contract for sale of the audio-visual business. Appellate review is circumscribed by the posture of the case in the lower court. Allen v. Graham, 8 Ariz.App. 336, 446 P.2d 240 (1968). We therefore decline to consider a legal theory postulated for the first time on appeal.

■ As noted above, the employment contract gave the defendant the option to terminate the agreement, upon notice thereof, if in its "good faith opinion, the plaintiff was incompetent, negligent, misconducted himself, or in any way failed in his performance of the duties set forth and contemplated under the agreement." We find nothing in the record to support a finding that the plaintiff's employment had been terminated by the defendant. It was not until October, when the defendant put out of its power the further performance of the employment contract by selling the business, that the plaintiff's discharge was effected. Gaspar v. United Milk Producers, 62 Cal.App.2d 546, 144 P.2d 867 (1944). We therefore reject the defendant's contention that the plaintiff was discharged because of dissatisfaction with his services. Holton v. Hart Mill Co., 24 Wash.2d 493, 166 P.2d 186 (1946). The record refutes the defendant's claim that it had made a good faith determination which precluded judicial interference.

The defendant's final contention is that the one year severance pay provision of a contract constitutes a penalty and is there-

**346**

fore invalid and unenforceable. We have held that where a contract provides for the amount of damages in the event there is a breach, the terms of the contract will control. Deuel v. McCollum, 1 Ariz.App. 188, 400 P.2d 859 (1965).

 A contract provision for damages, such as we have here, is enforceable if the amount specified bears any reasonable relation to anticipated damages and actual damages are difficult or impossible to ascertain. Marshall v. Patzman, 81 Ariz. 367, 306 P.2d 287 (1957); Weber v. Anspach, 473 P.2d 1011 (Or.1970). The plaintiff, had defendant performed, would have earned for the five-year period of the employment contract the sum of $60,000 plus 15% of the net profit before taxes. It is apparent that, at the time the contract was entered into, the severance pay provision bore a reasonable relation to anticipated damages and that actual damages would be difficult to compute. The trial court therefore was correct in enforcing the contract provision.

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.