152 So.2d 738 (1963)
DILLARD HOMES, INC., a Florida corporation, Appellant,
v.
Most Reverend Coleman F. CARROLL, Bishop of the Diocese of Miami, a corporation Sole, his Successors and Assigns in Office, and John J. O'Looney, Appellees.
No. 62-626.
District Court of Appeal of Florida. Third District.
May 7, 1963.
Pallot, Marks, Lundeen, Poppell & Horwich, Miami, for appellant.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, and Aubrey V. Kendall, Miami, for appellees.
Before PEARSON, TILLMAN, C.J., and HORTON and HENDRY, JJ.
HENDRY, Judge.
Appellant-plaintiff appeals from an order dismissing a complaint for specific performance of an agreement relating to the sale and purchase of a certain parcel of land.
*739 Plaintiff and defendant, O'Looney, executed a deposit receipt agreement whereby the plaintiff agreed to sell and the defendant agreed to purchase approximately 5 1/2 acres of land for the total price of $93,500. The deposit receipt agreement acknowledged the payment of the sum of $9,350 as a deposit on account of the purchase price. Other pertinent provisions of the agreement are as follows:
"It is agreed that this transaction shall be closed and the purchaser shall pay the balance of the cash at closing and execute all papers necessary to be executed by him for the completion of his purchase within 30 days from delivery or tender to him of an abstract of the said property; otherwise the sum this day paid shall be retained by the seller or agent as liquidated and agreed damages and the parties hereto shall be relieved of all obligations under this instrument."
In a separate typewritten clause on the reverse side of the printed form the following appeared:
"Paul J. Meiners, as broker in this transaction has earned his commission as of the date of this execution by the seller of its acceptance of offer, but shall not be entitled to payment until the date of closing and in the event the purchaser refuses for any reason to close, the deposit made hereunder shall be applied to the payment of such commission, provided, however, that the commission so paid shall not exceed one-half of the deposit."
Prior to the date in the contract for closing the transaction the purchaser wrote the seller as follows:
"Gentlemen:
"You are advised that our firm represents John J. O'Looney, the purchaser in the above-referred to transaction, the terms of which are outlined in that certain deposit receipt contract between John J. O'Looney, or nominee, and Dillard Homes, Inc., dated April 1962.
"The purchaser has decided not to pay the balance of the cash at closing, or execute the necessary papers to be executed by him for the completion of the purchase. In accordance with the terms of the deposit receipt contract above described, the deposit of $9,350.00, made by Monsignor John J. O'Looney at the time the deposit receipt contract was executed by him and held in escrow by Paul J. Meiners, shall be retained by the seller or agent as liquidated and agreed damages. You are hereby requested to advise Paul J. Meiners accordingly and direct him to deliver the said deposit to the seller, Dillard Homes, Inc."
In addition to the foregoing facts, the complaint alleges, inter alia, that notwithstanding statement made by the defendant that he would not complete the purchase, plaintiff made demand upon the defendant to close said transaction and set a closing date; that defendant again advised plaintiff that he would not consummate the purchase; as a result thereof, the closing was not held and the defendant wrongfully refused to perform the obligations he had contracted to perform. Further, plaintiff alleges that it offered to close said transaction, deliver a deed to the property involved, accept from the defendant a purchase money mortgage and offered to perform all other conditions precedent to the consummation of said sale and plaintiff was and is ready, willing and able to perform its part of the contract; that the performance of the contract was prevented by the defendant's wrongful failure and refusal to purchase as they had agreed; that the full and complete remedy at law against the defendant can not be had in that plaintiff has no other purchaser for said property or other offers to purchase; that its damages are incapable of being ascertained and that *740 the only remedy available to it which will afford complete and adequate relief is by specific performance to be directed and ordered by the court.
Defendants moved to dismiss the complaint on the ground that it failed to state a cause of action against either of the defendants. It is from the court's order granting said motion that this appeal is prosecuted.
We are called upon to decide whether the appellant, seller, has, by reason of the language of its deposit receipt, waived its right to specifically enforce its contract of sale and limited itself to the retention of the purchaser's deposit as its sole remedy for the purchaser's failure to perform. Our research on this subject has failed to produce a single Florida decision wherein a seller's right to specific performance of a land contract was dependent upon the interpretation of language similar to that involved in the deposit receipt in question.
Our attention has been directed to numerous Florida decisions involving the right of a purchaser to specifically enforce a land contract.[1] In these decisions, our courts have sometimes used language from which we might infer how they would hold if a seller's rights were involved. These inferences, however, run both ways so rather than attempt to interpret and reconcile language which is in reality obiter dictum, we feel justified in treating this as a question of first impression in this state.
A review of the decisions of other states on this question convinces us that the general rule to be applied is that a seller of land will be denied the remedy of specific performance if the contract contains a provision for liquidated damages and the language discloses that the parties intended to limit the seller to this remedy in the event the purchaser defaulted in his performance.
In Deborah Homes, Inc. v. Firestone, 135 N.Y.S.2d 289 (Sup.Ct. 1954), the court was presented with the following provision in a contract:
"Upon the purchasers' failure to take title as herein provided, or in the event of an unauthorized possession in violation of the terms hereof, this contract shall be deemed cancelled without further notice on the part of the seller and the amount paid hereunder shall belong to the seller as liquidated damages to reimburse the seller for all legal expenses, costs and damages seller may incur."
The court held that the seller was barred from maintaining an action for specific performance, stating:
"It is the court's conclusion that the quoted clause is unambiguous and that it clearly expresses an intention that upon the purchasers' failure to take title, the contract is to be deemed cancelled and the money theretofore paid is to belong to the seller as liquidated damages. The precise event intended to be covered by the quoted clause has happened and, as the contract provides, the agreement of the parties has been terminated. The remedy of specific performance necessarily is based upon the theory that there is a contract extant which a court decree may direct to be performed. When, as in this case, the parties have stated in clear language that upon the happening of a certain event their contract is to be deemed cancelled and thereafter the event which they had in mind occurs, any claim for specific performance is inconsistent with the cancellation provisions of the contract. A. & O. Cafeteria, Inc., v. Seventh Maltz Bldg., Inc., 238 App.Div. 520, 264 N.Y.S. 678."
*741 In the case of In re Tatnall,[2] the New Jersey court held that the following clause manifested the intent of the parties that specific performance by the seller of land be precluded:
"[I]n case the party of the second part fails for any reason to make settlement * * * the total sum of $1,250 shall be retained * * * as liquidated damages, without any further liability of any kind whatsoever, hereunder to the party of the second part."
Many additional decisions are found supporting the proposition that the test is whether the provision for liquidated damages is intended to secure performance, or is an alternative available to the buyer in place of his obligation to purchase.[3] The intent of the parties must be ascertained from a consideration of the language of the contract and the subject matter.[4]
The language of the contract in question specifically stated that in the event the purchaser failed to pay the balance due at closing and failed to execute the papers necessary for the completion of his purchase within the time provided, the seller shall retain the deposit as liquidated and agreed damages "and the parties hereto shall be relieved of all obligations under this instrument." (Emphasis supplied)
The intent to restrict the purchaser's liability in the event of his nonperformance to the amount of his deposit seems abundantly clear. This intention is further supported by the clause providing that if the purchaser refuses to close, the deposit shall be applied to payment of the broker's commissions, not to exceed 50% of the deposit. This latter clause anticipates the distribution of the deposit in the event of the purchaser's breach.
We have previously held that in an action for specific performance, our courts will not make a new or different contract for the parties simply because the one made by them proves ineffectual.[5] To grant the appellant, seller, specific performance would be to ignore the terms of the contract and to render it almost impossible for a buyer of land to limit the extent of his liability.
Accordingly, the order appealed is affirmed.
Affirmed.
NOTES
[1] See: Romines v. Nobles, Fla. 1951, 55 So.2d 563: Sperling v. Davie, Fla. 1949, 41 So.2d 318; Holltorf v. Walker, 97 Fla. 508, 121 So. 553; Vance v. Roberts, 96 Fla. 379, 118 So. 205; Riehl v. Bennett, Fla.App. 1962, 142 So.2d 761; Kubicek v. Way, Fla.App. 1958, 102 So.2d 173.
[2] 102 N.J. Eq. 445, 141 A. 174 (Ch. 1928), aff'd, 104 N.J. Eq. 486, 146 A. 918 (E. & A. 1929).
[3] See annotations contained in 98 A.L.R. 887, 32 A.L.R. 584.
[4] See: Hamilton v. Memorial Hospital, 16 N.J. Super. 405, 84 A.2d 660 (Ch. 1951); A. & O. Cafeteria, Inc. v. Seventh Maltz Bldg., Inc., 238 App.Div. 520, 264 N.Y.S. 678 (1933); Dukas v. Tolmach, 142 N.Y.S.2d 176 (Sup.Ct. 1955); Deborah Homes, Inc. v. Firestone, 135 N.Y.S.2d 289 (Sup.Ct. 1954); Middleton v. Moore, 289 S.W. 1045 (Tex. Civ.App. 1926).
[5] Giehler v. Ward, Fla. 1955, 77 So.2d 452.