Donald A. LEEBER, et al.

v.

The DELTONA CORPORATION, et al.

Supreme Judicial Court of Maine.

Argued June 6, 1988.
Decided Aug. 19, 1988.

Joyce Wheeler Poulin (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiffs.

Richard A. Davis (orally), Portland, for defendants.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, SCOLNIK * and CLIFFORD, JJ.

CLIFFORD, Justice.

Defendants, The Deltona Corporation and Marco Surfside, Inc., appeal from a judgment for the plaintiffs, Donald A. Leeber, Jeremy Morton and Jan Drewry, on Count I of their complaint entered in the Superior Court, Cumberland County, following a jury-waived trial. The plaintiffs cross-appeal from a judgment against them on the remaining two counts in their complaint.

This case arises out of a dispute involving a Florida real estate transaction. Defendant Marco Surfside, Inc., a wholly owned subsidiary of defendant The Deltona Corporation,[1] was the developer of a condominium real estate development on Marco Island in Florida. The plaintiffs, Portland area residents, decided to invest as a group in one of the condominium units being constructed by Deltona. On May 14, 1980, the plaintiffs, dealing with defendant Maine–Florida Properties, the exclusive sales agent in Maine for Deltona, signed a Subscription and Purchase Agreement ("the Agreement") to buy a condominium unit in the Marco Island project, designated as unit 711. The price for the unit was $150,200, with 15% of this amount, $22,530, paid at the time the Agreement was signed and the balance due at the closing date, to be specified by Deltona within four years from the time of the Agreement. Under the express terms of the Agreement, the $22,530 was to be retained by Deltona as liquidated damages in the event of a breach by the plaintiffs.

Beginning in May 1982, Deltona notified the plaintiffs several times that they would be required to close on the condominium on certain dates or the liquidated damages deposit would be retained by Deltona. After each notice, the plaintiffs were able to obtain an extension from Deltona. Deltona sent the plaintiffs a final closing notice on July 8, 1982, which set a closing date of July 20, 1982. The July 8 letter advised the plaintiffs that the Agreement would be cancelled if they did not close on unit 711. The plaintiffs did not close on the July 20 date. On July 27, 1982, Deltona informed the plaintiffs in writing that the Agreement had been cancelled and the liquidated damages deposit would be retained by Deltona. Deltona then sold unit 711 to another party on July 31, 1982, for what the trial court found to be $167,500.[2] That party paid a 15% deposit of $25,125.

Deltona refused to return the plaintiffs' deposit, and this suit was initiated in the Superior Court. Plaintiffs' complaint contained three counts: Count I, directed against Deltona and Marco Surfside, alleged that the liquidated damages provision was unenforceable. Plaintiffs further alleged that David Cloutier, president of Maine–Florida, had promised plaintiffs that he would find a buyer for their condominium allowing them to resell the unit prior to the closing, and that a buyer was found but no notice of that given to plaintiffs. Count II, treated by the court as being directed against Maine–Florida, alleged a breach of contract because of the failure to find a buyer for unit 711 before the closing date. Count III, also treated by the court as being directed against Maine–Florida, alleged a breach of fiduciary duty by Maine–Florida, based on its alleged status as real estate agent for the plaintiffs and its failure to notify the plaintiffs of the buyer who had been found for the condominium.

At the close of the plaintiffs' evidence in the nonjury trial in this case, the trial justice granted the defendants' motion for dismissal with respect to Counts II and III, and in his subsequent written decision, concluded that the plaintiffs "failed to meet

---

* Scolnik, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

1. Because Marco Surfside and Deltona have acted as one entity during this litigation and at all other relevant times, they will frequently be treated as one entity in this opinion and will be referred to collectively as "Deltona."

2. The Superior Court rejected the contention of defendants that the actual resale price was $150,000.

the burden of proof" on those counts and entered judgment for defendant Maine–Florida Properties. As to Count I, the trial justice determined that the enforcement of the liquidated damages provision was unconscionable. The trial justice found that Deltona had proved it incurred actual damages consisting of some administrative costs and a $5,704 commission paid to Maine–Florida from the deposit and awarded plaintiffs $15,020—the balance of the deposit. A subsequent motion by the defendants to amend the trial justice's written findings of fact and conclusions of law under M.R.Civ.P. 52(b) was denied. Defendants Deltona and Marco Surfside then appealed on Count I to this court in timely fashion. The plaintiffs cross-appealed on Counts II and III. We vacate the judgment as to Count I of the complaint, and affirm as to Counts II and III.

### I.

The defendants contend that the liquidated damages provision in the Agreement was valid and enforceable under Florida law.[3] The Agreement provided for the retention by Deltona of the 15% deposit in the event of a breach of the Agreement on the part of the plaintiffs. The validity of a liquidated damages clause is assessed in the following way under Florida law:

> If the damages are ascertainable on the date of the contract, the clause is a penalty and unenforceable; if they are not so ascertainable, the clause is truly one for liquidated damages and enforceable; however, if subsequent circumstances demonstrate it would be unconscionable to allow the seller to retain the sum in question as liquidated damages, equity may relieve against the forfeiture.

*Bruce Builders, Inc. v. Goodwin,* 317 So. 2d 868, 869–70 (Fla.Dist.Ct.App.1975); *accord Medical Equip. Rental Co. v. Tarr,* 467 So.2d 459, 460 (Fla.Dist.Ct.App.1985); *Najor v. Meyer,* 383 So.2d 747, 748 (Fla. Dist.Ct.App.1980); *South Florida Region-* *al Planning Council v. Board of County Comm'rs,* 372 So.2d 1142, 1144–45 (Fla. Dist.Ct.App.1979). *See also Hutchison v. Tompkins,* 259 So.2d 129, 131–32 (Fla. 1972).

The plaintiffs do not dispute that damages were not ascertainable at the time the Agreement was entered into. Thus, the issue placed before us in this case is whether the Superior Court erred in its determination that retention of money by the sellers under an otherwise valid liquidated damage provision was unconscionable under the standard set out in *Bruce Builders.*

■ A determination of unconscionability cannot be made unless the circumstances of the case truly "shock the conscience" of the court. *See Beatty v. Flannery,* 49 So.2d 81, 82 (Fla.1950); *Berndt v. Bieberstein,* 465 So.2d 1264, 1265 (Fla.Dist.Ct. App.1985); *Bruce Builders,* 317 So.2d at 870; *O'Neill v. Broadview, Inc.,* 112 So.2d 280, 282–83 (Fla.Dist.Ct.App.1959). The factual findings upon which the conclusion of unconscionability is based are reviewed on a clearly erroneous basis. *Chicken 'N' Things v. Murray,* 329 So.2d 302, 305 (Fla.1976); *Crook v. Russell,* 532 A.2d 1351, 1353 (Me.1987).

Under Florida law, if the liquidated damages provision is not a penalty, it is enforceable unless the plaintiff proves the existence of one or more of the following factors:

> (1) an intimation of fraud on the seller's part; (2) misfortune beyond his control accounting for the buyer's failure to fulfill the contract; (3) a mutual rescission of the contract; or (4) a benefit to the seller "the retention of which [when compared to the total contract price would be] shocking to the conscience of the court."

*Johnson v. Wortzel,* 517 So.2d 42, 43 (Fla. Dist.Ct.App.1987) (per curiam) (alteration by court in *Johnson* opinion) (quoting *Beatty,* 49 So.2d at 82).[4] Here, there was no

---

**3.** All parties agree with the determination of the trial justice that Florida law controls the substantive issue of liquidated damages.

**4.** Plaintiffs cite *Multitech Corp. v. St. Johns Bluff Inv. Corp.,* 518 So.2d 427, 433 (Fla.Dist.Ct.App. 1988), for the proposition that another factor to be considered in an unconscionability analysis

showing of fraud on Deltona's part, nor evidence that plaintiffs' failure to buy was caused by misfortune beyond their control, nor evidence of mutual rescission. Only Deltona's retention of $22,530, 15% of the purchase price, examined under a "shocking to the conscience" standard, is properly considered by the court. *Id.*

Liquidated damages are favored under Florida law, *Hutchison*, 259 So.2d at 132, and Florida courts have uniformly viewed liquidated damage sums in the range of 15% as reasonable. *Wortzel*, 517 So.2d at 43 (18.2% not unconscionable); *Dade Nat'l Dev. Corp. v. Southeast Invs. of Palm Beach County, Inc.*, 471 So.2d 113, 116 (Fla.Dist.Ct.App.1985) (18%); *Hooper v. Breneman*, 417 So.2d 315, 318 (Fla.Dist.Ct. App.1982) (13.3%); *O'Neill*, 112 So.2d at 281–83 ($1500 deposit on $10,440 contract).

The Superior Court, despite its recitation that it found defendants' retention of the liquidated damages to be unconscionable, did not apply a true "shock the conscience" standard in overriding the liquidated damage provision in this case. The court considered the fact of the resale of the condominium unit by Deltona several days after the default but several months after the originally designated closing date, and allowed the plaintiff buyers to recover from Deltona all of the previously paid deposit except what Deltona convinced the court were its actual out of pocket losses resulting from plaintiffs' breach.[5] Such an approach nullified the effect of the liquidated damages provision and made this case indistinguishable from one of ordinary breach of contract. This result undercut the traditional role of liquidated damages

provisions, which have always served as an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action. *Restatement (Second) of Contracts* § 356 comment a (1981); 5 A. Corbin, *Corbin on Contracts* §§ 1054, 1062 (1964). *See Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1139 (Me.1978).

Efforts by contracting parties to avoid litigation and to equitably resolve potential conflicts through the mechanism of liquidated damages should be encouraged. *Hutchison*, 259 So.2d at 132; *Monsen Eng'g Co. v. Tami–Githens, Inc.*, 219 N.J. Super. 241, 530 A.2d 313, 318–19 (App.Div. 1987). Prompt resale of real estate units by sellers upon breach of contract by buyers likewise should be encouraged. However, the Superior Court ruling in this case, if allowed to stand, would have the opposite effect.

Florida law provides that, under a real estate contract containing a liquidated damages clause similar in language to the instant contract, sellers are denied the remedy of specific performance. *Dillard Homes, Inc. v. Carroll*, 152 So.2d 738, 740 (Fla.Dist.Ct.App.1963). Moreover, their damage recovery is limited to the liquidated damage amount. *See Design Time, Inc. v. Monco of Orlando, Inc.*, 518 So.2d 454, 456 (Fla.Dist.Ct.App.1988); *Hall Constr. Co., Inc. v. Beynon*, 507 So.2d 1225, 1226 (Fla.Dist.Ct.App.1987); *Brusko v. Co., Inc. v. Beynon*, 507 So.2d 1225, 1226 (Fla.Dist.Ct.App.1987). Buyers breaching such contracts, not being subject to specific performance nor to liability for excess damages should the sellers' losses exceed the

under Florida law is "whether or not the sellers actually suffered any damage as a result of the breach." We are reluctant to accept this as a valid factor for assessing unconscionability under Florida law. The *Multitech* court, only one of several District Courts of Appeal in Florida, failed to cite any precedent for that holding and we can find no case decided by Florida's highest court, the Florida Supreme Court, that incorporates this factor. Moreover, to routinely allow such a consideration in determining unconscionability would unduly undermine one of the purposes of liquidated damages, namely to avoid the difficulties and uncertainties of proof of actual damages. *Restatement (Second) of*

*Contracts* § 356 comment a (1981); 5 A. Corbin, *Corbin on Contracts* §§ 1054, 1062 (1964). *See Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1139 (Me.1978). In any event, *Multitech* is distinguishable from the instant case because the court found unconscionability in a case where the liquidated damage amount was $120,-000 and the seller suffered *no* damage.

5. The court was unpersuaded by evidence presented by defendants that plaintiffs' delays in closing the transaction resulted in substantial losses to defendants.

amount of liquidated damages, would have nothing to lose in challenging the amount of liquidated damages retained or sought to be recovered by the sellers in every case where the buyers suspected the actual losses of the sellers to be less than the liquidated damage amount.

▪ Under Florida law, the determination of the unconcionability of allowing a seller to retain liquidated damages under an otherwise valid liquidated damage provision should be based on the circumstances existent "at the time of breach." *Hutchison*, 259 So.2d at 132.[6] A case of liquidated damages, when the liquidated damage amount is not unreasonable on its face, is not converted as a matter of course to one of ordinary breach of contract by the seller's fortuitous resale of the contract real estate subsequent to the buyer's breach. Sellers are inescapably bound by the liquidated damage provisions in such contracts. Buyers should be bound as well unless the plaintiff proves that the circumstances are so extraordinary that the sellers' retention of the liquidated damage amount would truly shock the conscience of the court. *Beatty*, 49 So.2d at 82.

▪ It is undisputed that this liquidated damage amount of $22,530, 15% of the total contract price of the Florida real estate, was reasonable on its face and not a penalty. The retention of that sum by the sellers in this case, when plaintiff buyers delayed closing on the project for several months before breaching the contract, and sellers subsequently were able to resell the real estate through their own efforts and in doing so reduced their actual losses flowing from plaintiffs' breach, is not so extraordinary or unfair as to shock the conscience of the court. *Id.* The plaintiffs having failed to demonstrate circumstances sufficiently extraordinary to meet the shock the conscience test of *Beatty*, defendants must be allowed to retain the liquidated damage amount.

## II.

In their cross-appeal, plaintiffs contend that the trial justice impermissibly dismissed Counts II and III of the plaintiffs' complaint alleging breach of contract and breach of fiduciary duty on the part of defendant Maine–Florida. Plaintiffs argue that the trial justice did not act as a factfinder, but ruled on the sufficiency of the evidence under M.R.Civ.P. 50(a)[7] in dismissing those counts. Since the evidence presented at trial was sufficient to withstand a motion for directed verdict on the breach of contract and breach of fiduciary duty claims, plaintiffs urge us to grant them a new trial on those counts. We are unpersuaded by plaintiffs' arguments. Although the trial justice did use the words "directed verdict" and "dismissed" Counts II and III at the close of the plaintiffs' case at trial, the record reflects that he acted as a factfinder under M.R.Civ.P. 50(d).[8] This

---

6. Some states, including Maine, measure the soundness of a liquidated damage provision as of the time the contract is made and not at the time of the breach. *Dairy Farm Leasing*, 395 A.2d at 1137; *Walter F. Heller & Co. v. American Flyers Airline Corp.*, 459 F.2d 896, 898 (2d Cir. 1972) (N.Y. law); *Pembroke v. Gulf Oil Corp.*, 454 F.2d 606, 611 (5th Cir.1971) (La. law); *Babbitt Ford, Inc. v. Navajo Indian Tribe*, 519 F.Supp. 418, 432 (D.Ariz.1981); *Monsen Eng'g Co. v. Tami–Githens, Inc.*, 219 N.J.Super. 241, 530 A.2d 313 318–19 (App.Div.1987).

7. M.R.Civ.P. 50(a) provides for a directed verdict in a jury case. In pertinent part, it reads:

> **(a) Motion for Directed Verdict; When Made; Effect.** In an action *tried to a jury,* a motion for a directed verdict may be made at the close of the evidence offered by an opponent or at the close of all the evidence.

(Emphasis added). In such a case the trial justice must view the evidence in a light most favorable to the party against whom the motion is made and not assess the credibility of witnesses. 1 Field, McKusick & Wroth, *Maine Civil Practice* § 50.2, at 665–66 (2d ed. 1970).

8. M.R.Civ.P. 50(d) provides, in pertinent part, as follows:

> **(d) Motion for Judgment in Nonjury Case.** After the plaintiff, in an action *tried by the court without a jury,* has completed the presentation of the plaintiff's evidence, the defendant ... may move for judgment on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them....

(Emphasis added). Under Rule 50(d), unlike Rule 50(a), the court may weigh the evidence and assess credibility. *Wyman v. Osteopathic Hosp. of Maine, Inc.*, 493 A.2d 330, 333 (Me. 1985); *Hurd v. Hurd*, 423 A.2d 960, 963 (Me.

was a nonjury case, and in entering judgment for Maine–Florida in its written opinion, the court found that the "plaintiffs failed to meet the burden of proof." At trial, in orally granting defendants' motion, the trial justice stated, "From the [plaintiffs'] testimony there was some wishes and hopes I guess but there was no legally binding agreement in behalf of Maine–Florida Properties, Deltona or Marco–Surfside." Although the trial justice did say orally at trial that plaintiffs failed in their burden "even viewing the evidence most favorable" to them, it is clear that he resolved factual issues against the plaintiffs and that his ruling must be treated as the granting of a motion for judgment under M.R.Civ.P. 50(d). *Wyman v. Osteopathic Hosp. of Maine, Inc.,* 493 A.2d 330, 333–34 (Me.1985).

We review the judgments on Counts II and III to determine whether the justice as a trier of fact committed clear error in making his decision. *See Wyman,* 493 A.2d at 334. Since the plaintiffs had the burden of establishing those claims, we will vacate the judgments only if the evidence adduced at trial compelled the justice to

enter judgment for the plaintiffs. *See Harmon v. Emerson,* 425 A.2d 978, 981–82 (Me.1981).

In this case, where there was no written agreement produced by plaintiffs, we cannot say that the trial court was compelled to find a contract between plaintiffs and Maine–Florida to procure another buyer for the condominium unit or that there was any breach of fiduciary duty.

The entry is:

Judgment vacated as to Count I. Remanded to the Superior Court for entry of judgment in favor of defendants The Deltona Corporation, Inc., and Marco Surfside, Inc. Judgment affirmed as to Counts II and III.

All concurring.

1981); 1 Field, McKusick & Wroth, *Maine Civil Practice* § 41.7, at 579 (2d ed. 1970).