812 P.2d 1115

**PIMA SAVINGS AND LOAN ASSOCIATION, an Arizona corporation, Plaintiff/Appellee,**

**v.**

**John RAMPELLO and Nancy Rampello, husband and wife, Defendants/Appellants.**

**No. 2 CA-CV 90-0179.**

Court of Appeals of Arizona, Division 2, Department B.

April 30, 1991.

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. by James W. Stuehringer, Tucson, for plaintiff/appellee.

Rosen & Friederich by Gayle D. Reay and Dennis A. Rosen, Tucson, for defendants/appellants.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a partial summary judgment in favor of Pima Savings and Loan Association (Pima).[1] Pima sued the Rampellos for breach of contract and for violation of A.R.S. § 12–671 (insufficient funds checks) which arose out of the Rampellos' contract with Pima to purchase 65 condominium units located in Bullhead City, Arizona. The facts leading up to this suit are as follows.

### I.

On April 15, 1988, the Rampellos contracted to buy the Roadhaven Condominiums from Pima for $4.7 million with a $290,000 cash downpayment and the balance to be financed by purchase money

---

1. The trial court entered judgment pursuant to Ariz.R.Civ.P. 54(b), 16 A.R.S., thus enabling the Rampellos to appeal.

loaned by Pima. John Rampello gave a $165,000 check as part of the downpayment.

The contract provided for liquidated damages as follows:

> If the closing does not occur due to default of buyer, the parties agree that Pima shall be paid the sum of two hundred ninety thousand dollars ($290,000.00) as liquidated damages, which sum the parties agree is a reasonable sum considering all of the circumstances existing on the date of this agreement
> . . .

The contract also gave the Rampellos through April 24, 1988, to review and inspect the condition of the real estate and the condition of its title, and made the sale contingent upon the Rampellos' approval by the end of April 24. If they did not give written notice of disapproval within the period, the contract provided that the Rampellos would be deemed to have approved.

John Rampello conducted his inspection of the premises one or two days prior to April 24, 1988. On April 29, he sent a $125,000 check for the balance of the downpayment. On May 20, 1988, well after the time set forth in the agreement, Rampello sent a letter rescinding the contract which Pima received on May 25, 1988. After it received the Rampellos' letter, Pima approved Rampello's loan. The checks that Pima had received from the Rampellos were returned due to insufficient funds and Pima demanded that they pay, as liquidated damages, the sum of $290,000 as set forth in the contract. This suit followed the Rampellos' refusal to pay.

Pima's motion for summary judgment was supported by the testimony of one its employees, Michael Foor, who had negotiated the agreement on Pima's behalf and who was responsible for calculating the liquidated damages that were set forth in the agreement. He testified as to the various factors he took into consideration in arriving at the figure of $290,000. Those factors which were considered difficult to estimate were: any loss of the opportunity to sell the property while it was in escrow, the effect of a failed sale on the market value of the property, the depreciation of the property until it is sold and the effect of such depreciation on market values, and potential hazards of ownership not fully covered by insurance. He also considered one or two factors which may not have been compensable damages; however, he did not assign any dollar value or percentage to any of the factors.

There was also evidence that one year before the Rampello agreement, Pima entered into an agreement with another buyer, New Age Investment (NAI), which provided for liquidated damages in the sum of $25,000. An affidavit presented by Pima stated that Pima's damages were $77,573.87, not including financing discounts, Pima's in-house administrative costs, and anticipated ongoing warranty expenses. Furthermore, the evidence was that, at the time of the motion for summary judgment, all but three of the units had been sold. Pima moved for summary judgment on its claim for liquidated damages, which was granted by the trial court.

The main issue in this case is whether the provision for liquidated damages constituted an unenforceable penalty. The Rampellos also contend that the previous contract with NAI raised an issue as to the reasonableness of the liquidated damage provision and that there was evidence that they rescinded the contract, thus precluding summary judgment in Pima's favor.

## II.

The traditional role of liquidated damages provisions is to serve as an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action, and efforts by the contracting parties to avoid litigation and to equitably resolve potential conflicts through the mechanism of liquidated damages should be encouraged. Restatement (Second) of Contracts § 356, comment *a* (1981). However, the parties to a contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on

either economic or other ground and a term providing such a penalty is unenforceable on the grounds of public policy. Id.

Whether a stipulation is for liquidated damages or a penalty is a question of law for the court. *Marcam Mortgage Corp. v. Black,* 686 P.2d 575 (Wyo.1984).

■ The test for whether a contract fixes a penalty or liquidated damages is whether payment is for a fixed amount or varies with the nature and extent of the breach, *Miller Cattle Company v. Mattice,* 38 Ariz. 180, 298 Pac. 640 (1931), which means that an agreement made in advance of a breach is a penalty unless both of two conditions are met. First, the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by any breach. Second, the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation. *Larson–Hegstrom & Associates, Inc. v. Jeffries,* 145 Ariz. 329, 701 P.2d 587 (App.1985).[2]

■ The difficulties of proof of loss are to be determined at the time the contract is made and not at the time of the breach. *Hutchison v. Tompkins,* 259 So.2d 129 (Fla.1972); *Leeber v. Deltona Corp.,* 546 A.2d 452 (Me.1988). Furthermore, the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss. Restatement (Second) of Contracts § 356, comment *b* (1981). However, the amount retained upon a contract's breach will be considered a penalty if it is unreasonable. *Marshall v. Patzman,* 81 Ariz. 367, 306 P.2d 287 (1957).

The Maine court stated in a case similar to ours:

A case of liquidated damages, when the liquidated damage amount is not unreasonable on its face, is not converted as a matter of course to one of ordinary breach of contract by the seller's fortuitous resale of the contract real estate subsequent to the buyer's breach. Sellers are inescapably bound by the liquidated damage provisions in such contracts. Buyers should be bound as well unless the plaintiff proves that the circumstances are so extraordinary that the sellers' retention of the liquidated damage amount would truly shock the conscience of the court.

*Leeber v. Deltona Corp.,* 546 A.2d at 456.

■ The liquidated damage amount of $290,000 in this case is little more than six percent of the total contract price and was reasonable on its face. We note that real property is not a liquid asset easily converted into cash. Who knew how long it would take to dispose of it and what it would sell for in the marketplace? That Pima was subsequently able to resell the real estate through their own efforts and in doing so reduce its actual losses flowing from the Rampellos' breach does not make the retention of the downpayment so extraordinary or unfair as to shock the conscience of this court.

The Rampellos do not contend that the percentage is unreasonable but argue that certain factors which were considered by Pima in arriving at the amount of liquidated damages were not compensable. The record does not show what weight these factors were given. In any event, the question is whether the stipulated amount was, when all the facts are considered, reasonable at the time of the contract and not whether it was reasonable with the benefit of hindsight. We believe that it was. Further, the second prong of the test was also met. At the time of the contract it was difficult to estimate the damages accurately because it was unknown when the property would be resold.

### III.

■ The Rampellos argue that the NAI contract entered into approximately one

---

**2.** In *Larson–Hegstrom* we relied on Restatement (Second) of Contracts § 356 and Restatement (First) of Contracts § 339. In 1981, § 356 was redrafted and now reads: "(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reason-

able in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."

year prior to the Rampello contract and providing for only $25,000 liquidated damages, creates a question of fact as to the reasonableness of the amount. We do not agree. The undisputed evidence was that the NAI contract was a "sweetheart deal" fostered by in-house personnel at Pima who believed there was no chance that the escrow would not close. In any event, since the question of whether the provision here is a penalty or not is a question of law for the court, the NAI contract creates no question of fact.

### IV.

 The agreement gave the Rampellos nine days from the date of execution to conduct an inspection of the property and notice their disapproval. The provision in question stated:

8.00 *Due Diligence.* BUYER shall have through April 24, 1988 to review and inspect the condition of the REAL ESTATE and the condition of its title and all other matters related to the REAL ESTATE or its title.

The sale contemplated herein is subject to and contingent upon BUYER's approval *within such period,* of the above, which approval may not be unreasonably withheld. If BUYER does not give PIMA written notice of disapproval *within such period* (which notice must be actually received by PIMA within such period to be effective, notwithstanding the general notice provisions hereof), BUYER shall be deemed to have approved all such matters.

. . . . .

(Emphasis added.)

The Rampellos contend that the above provision gave them a reasonable time after April 24, 1988, to give written notice of disapproval and that whether their notice of disapproval mailed on May 20 and received May 25, 1988, was reasonable was a question of fact for the trier of fact, thus precluding summary judgment. We do not agree. When the language of the contract provides an option to terminate "on or before" a specified time or date or "within" a specified period of time, the option cannot be exercised after the time period or date has gone by. *Dickinson v. Stokes,* 62 F.2d 84 (6th Cir.1932); *Scott v. Goodin,* 21 Cal. App. 178, 131 Pac. 76 (1913); 17A Am. Jur.2d Contracts § 561 (1991). The contract provision here provides for the exercise of the option to terminate "within" a specified period of time and the Rampellos' failure to do so is fatal.

Pima has asked for and is entitled to its attorney's fees on appeal, which will be granted upon its compliance with Ariz.R. Civ.App.P. 21(c), 17B A.R.S.

Affirmed.

FERNANDEZ, C.J., and HATHAWAY, J., concur.