NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL E. YOUNG, et al., *Plaintiffs/Appellants*,

*v.*

ALLEN HOMES, LLC, *Defendant/Appellee*.

No. 1 CA-CV 21-0740
FILED 9-29-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-056337
The Honorable Sally Schneider Duncan, Retired Judge

**REVERSED AND REMANDED**

COUNSEL

The Kozub Law Group, PLC, Phoenix
By Richard W. Hundley
*Counsel for Plaintiff/Appellant*

FENNEMORE CRAIG, P.C., Phoenix
By J. Christopher Gooch, Emily Ward
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

**W I L L I A M S**, Judge:

¶1 Michael Young and Debra Lux-Young ("the Youngs") sued Allen Homes, LLC ("Allen Homes"). Allen Homes counter-sued the Youngs. The superior court granted summary judgment for Allen Homes on its breach of contract counterclaim. The Youngs appeal. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2 The Youngs hired Allen Homes, a small custom home builder, to construct their new single-family residence for the agreed sum of nearly $2 million. The Youngs paid Allen Homes a "non-refundable deposit of $80,000.00" as the parties' written contract required. The contract further required that the Youngs "be responsible for making application for the [city] building permits," as well as "all additional permits necessary" for Allen Homes to complete the project.

¶3 The Youngs submitted their building plans to the homeowner's association ("HOA") for approval, but were informed approval was "unlikely" because of, in part, the direction the garage doors were facing. The Youngs had their architect redesign the project by moving the garage and its doors. And over the next few months, the Youngs had a series of back-and-forth communications with the HOA about the building and landscaping plans. Ultimately, the Youngs decided against submitting the plans for the HOA's final approval or continuing with the project.

¶4 The Youngs then requested Allen Homes refund the $80,000.00. When Allen Homes refused, the Youngs sought declaratory relief and claimed Allen Homes was unjustly enriched. More specifically, the Youngs argued that the $80,000.00 deposit was an unenforceable penalty because it did not reasonably compensate Allen Homes for its actual or anticipated losses. In the alternative, the Youngs claimed that no contract was formed because it was based on the mutually mistaken assumption that the HOA would approve the building plans.

¶5 Both parties moved for summary judgment. The superior court granted summary judgment for Allen Homes on the Youngs' unjust enrichment claim but denied the remainder of both parties' motions. Allen Homes then counter-sued the Youngs for breach of contract and successfully moved for summary judgment on its counterclaim, rendering the Youngs' remaining claim for declaratory relief moot. The court awarded

Allen Homes its costs of $1,380.66 and attorney's fees of $54,080.93. After unsuccessfully moving the court to reconsider, the Youngs timely appealed.

¶6        We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶7        Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). To obtain summary judgment on its own breach of contract claim, Allen Homes had to prove every element of its claim with "undisputed admissible evidence that would compel any reasonable juror to find in its favor." *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 18 (App. 2012) (citation omitted). A motion for summary judgment "must stand on its own and demonstrate by admissible evidence that the [moving party] has met its burden of proof and that it is entitled to judgment as a matter of law." *Wells Fargo Bank*, 231 Ariz. at 211, ¶ 1. The party asserting a claim always bears the ultimate burden of persuasion, Ariz. R. Evid. 301, and "the mere absence of a genuine dispute of material fact does not automatically entitle" that party to judgment. *Wells Fargo Bank* at 211-13, ¶¶ 1, 16.

¶8        We review a grant of summary judgment de novo, *Dreamland Villa Cmty. Club, Inc. v. Rainey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010), "view[ing] the facts and reasonable inferences in the light most favorable to the non-prevailing party," *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163, ¶ 11 (2017).

*I.        Liquidated Damages*

¶9        The Youngs contend that the "non-refundable deposit of $80,000.00" was an unenforceable penalty. Because contract remedies are compensatory in nature and not punitive, a contract term providing a punitive remedy for breach of contract is unenforceable as a matter of public policy. *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 110, ¶ 9 (2017).

¶10        However, parties to a contract can agree in advance to an amount of liquated damages should either party breach. *Id.* at 110, ¶8. And liquidated damages provisions are enforceable if they are intended "to compensate the non-breaching party rather than penalize the breaching party." *Id.* at 109 ¶ 1. The party seeking to avoid enforcement of a liquidated damages clause—here, the Youngs— "has the burden of persuading [the

court] that the provision imposes an unenforceable penalty." *Id.* at 112, ¶ 17. Whether a contract provides for proper liquidated damages, or an improper penalty is an issue of law we review de novo. *Id.* at ¶ 18.

**¶11**        The Arizona Supreme Court in *Dobson Bay* adopted the Restatement (Second) of Contracts § 356(1) to test the enforceability of a liquidated damages provision. *Id.* at 111, ¶ 15. Section 356(1) provides that a liquidated damages provision will be enforced "but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Id.* at ¶ 12. Thus, courts must consider "(1) the anticipated or actual loss caused by the breach, and (2) the difficulty of proof of loss." *Id.*

### A.        Anticipated Loss

**¶12**        On its face, the nonrefundable deposit is an inflexible forecast of losses that does not "var[y] with the nature and extent of the breach." *Pima Sav. & Loan Ass'n v. Rampello*, 168 Ariz. 297, 300 (App. 1991). Whether the Youngs breached on the first day of the contract or the hundredth day, they would lose the entire $80,000.00. This fixed amount weighs against concluding that the deposit was a reasonable estimate of anticipated losses at the time the contract was entered into. *See Dobson Bay*, at 112, ¶ 21 (holding that a late fee was unenforceable in part because it was "static" and "payable on demand whether the payment [was] one day late or one year late.") And the contract is silent about what anticipated costs or damages went into arriving at the $80,000.00 figure. On this record, we cannot say that $80,000.00 was a reasonable estimate of anticipated losses at the time the contract was entered.

### B.        Actual Loss

**¶13**        But a liquidated damages clause may also be based on actual losses under the Second Restatement. And Allen Homes presented some evidence of its actual damages, including superintendent costs, opportunity costs, and pre-construction work.

**¶14**        First, the contract was entered into April 20, 2018, and the Youngs cancelled September 15, 2018. During those five months, Allen Homes retained a superintendent for the project at the cost of $900.00 per week. Thus, the record shows that Allen Homes suffered roughly $18,900.00 in damages (21 weeks x $900.00 per week) by way of payment to its superintendent.

¶15 Second, Allen Homes claims "the non-refundable deposit was in place because [it] was required to forego other opportunities to build homes for clients due to its commitments and obligations" to the Youngs. And the record contains evidence that Allen Homes passed up as many as two potential home-building projects because of its contract with the Youngs.

¶16 Third, Allen homes contends the non-refundable deposit "provided payment for . . . pre-construction work for [the Youngs'] home, such as (1) applying for septic tank permits; (2) clarifying scopes of work for Trades; (3) selections of finishes and materials for the home; (4) obtaining additional bids from Trades; and (5) creating a construction schedule."

¶17 Even so, summary judgment for Allen Homes was not warranted because the record did not establish actual damages with "undisputed admissible evidence that would compel any reasonable juror to find in its favor." *Wells Fargo Bank*, 231 Ariz. at ¶ 18. Allen Homes did not assign any dollar amount to the lost contracts, and Allen Homes offered no monetary value of its alleged pre-construction work. And while the Youngs did not present any evidence to contradict the losses Allen Homes' claims, that is not enough. *See Wells Fargo Bank*, 231 Ariz. at 211, ¶¶ 1, 16 ("[T]he mere absence of a genuine dispute of material fact does not automatically entitle a plaintiff to judgment.").

¶18 Consequently, we reverse the grant of summary judgment for Allen Homes, including its award of attorney's fees and costs, and remand for further proceedings. To be clear, we do not conclude that the $80,000.00 provision is necessarily unenforceable, only that on this record $80,000.00 does not reasonably reflect Allen Homes' actual losses. On a fuller factual record, the superior court may or may not conclude otherwise. *See Orme School v. Reeves*, 166 Ariz. 301, 311 fn. 10 (1990) ("Discovery is complete when the parties have completed all the discovery they intend, when they have completed the discovery allowed by the court, [or] when the time for discovery allowed by rule of the court has expired . . . .").

II. *Mutual Mistake of Fact*

¶19 The Youngs also claim that their contract was unenforceable because they and Allen Homes made a mutual mistake of fact about the HOA building plan approval. We disagree.

¶20 A party seeking to void a contract based on a mutual mistake of fact must prove that "(1) the parties made a mistake about a basic

assumption on which they made the contract, (2) the mistake had a material effect on the exchange of performances, and (3) the party seeking avoidance does not bear the risk of mistake." *Hall v. Elected Officials' Ret. Plan*, 241 Ariz. 33, 42, ¶ 25, (2016) (citing the Restatement (Second) of Contracts § 152(1) (1981)).

**¶21**　　　According to the Youngs, "the mutual mistake was the assumption the building plans specifically identified in the Contract Agreement would be approved" by the HOA "and the residence built to these specifications." Because the HOA did not approve the building plans, the Youngs argue a mutual mistake of material fact arose that voided the contract.

**¶22**　　　The Youngs agree that the contract placed the onus on them to obtain not just city permits, but also HOA approval. The contract acknowledged that the building plans had not yet been approved and "may change," even providing a process for change orders to the building plans.

**¶23**　　　Though the Youngs submitted their initial building plans to the HOA, they acknowledge they opted not to re-submit the amended plans for final HOA approval because they were dissatisfied with the changes to the plans the HOA required and "cancelled the Construction Agreement." Whether the HOA's required changes to the building plan specifications were minor in nature, or material in nature (a distinction the Youngs press), their contractual obligation to obtain "all additional permits necessary" to complete the project remained unchanged. On this record, no mutual mistake of material fact existed.

## CONCLUSION

**¶24**　　　For the foregoing reasons we reverse and remand.

