NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOSEPH ANDERSON, et al., *Plaintiffs/Appellees*,

*v.*

LIFEDEVINE5040, LLC, et al., *Defendants/Appellants*.

No. 1 CA-CV 25-0623

FILED 05-07-2026

Appeal from the Superior Court in Maricopa County
No. CV2023-014321
The Honorable Jennifer C. Ryan-Touhill, Judge

**VACATED**

COUNSEL

Ballard Spahr, LLP, Phoenix
By Jay A. Zweig, Mitchell Turbenson
*Counsel for Plaintiffs/Appellees*

Enara Law, PLLC, Scottsdale
By Ross P. Meyer, Sara N. Rock
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Daniel J. Kiley and Judge D. Steven Williams joined.

---

**B A I L E Y**, Judge:

¶1 This is an appeal from a $200,000 "pocket judgment" entered under a settlement agreement after the promisors were four days late in paying the first installment on a $75,000 settlement sum. We hold that the judgment was an unenforceable penalty, and we therefore vacate it.

## FACTS AND PROCEDURAL HISTORY

¶2 Rozaliya Heinen and Arvin Thomas, through their company LifeDevine5040 LLC, (collectively, "the Thomases") own a home ("the Property") in the same neighborhood as Joseph Anderson and Stefanie and Michael Lotz (collectively, "the Neighbors"). In late 2023, the Neighbors sued the Thomases for renting out the Property as an event venue, seeking an injunction and damages for nuisance.

¶3 The Neighbors obtained a preliminary injunction restricting the Thomases' use of the Property. At some point, the Thomases moved to Canada, leaving the Property as their only significant domestic asset. By early 2025, when the parties participated in a court-ordered settlement conference, the Thomases were "actively attempting to sell" the Property.

¶4 The settlement conference resulted in the parties executing a "Mediator's Proposal" resolving all claims in early February 2025 ("the Settlement Agreement"). The Settlement Agreement stated that it represented a binding settlement under Arizona Rule of Civil Procedure 80(a) even if the parties failed to prepare contemplated formal settlement documents. The Settlement Agreement further provided that "any dispute . . . regarding these Settlement Terms" would be submitted to the judge assigned to the litigation as "Arbitrator" for "a binding, non-appealable determination to the extent that this Arbitrator is not prohibited from making such a determination."

¶5 Under the Settlement Agreement, with "time . . . of the essence for all terms," the Thomases promised to pay a "Settlement Amount" of $75,000 in three equal installments, due to the Neighbors'

counsel by February 28, July 31, and December 10, 2025, respectively. The agreement further provided:

> Unpaid portions of the Settlement Amount shall be secured by a "pocket judgment" in the customary amount of 300% of the unpaid portion of the Settlement Amount. The Court will retain jurisdiction to enter the pocket judgment. The pocket judgment will not be requested, filed or entered unless a payment of the Settlement Amount is not timely made. Notwithstanding the timing of payments set forth above, the entire amount of the Settlement Amount shall be immediately due and payable at the time of the close of escrow in which [the Thomases] sell the "Property" . . . .

The agreement also stated that "[u]pon the payment of the Settlement Amount, the Preliminary Injunction entered in this matter shall terminate and [a stipulated] Permanent Injunction [restricting the Thomases' use of the Property] . . . shall be entered instead."

¶6        After entering the Settlement Agreement, the parties did not execute the additional contemplated documents or dismiss the case. The Thomases' counsel did, however, communicate with the Neighbors' counsel about wiring instructions for the first $25,000 installment payment. And shortly before the first payment deadline, the Thomases directed the sum to be wire-transferred from their Canadian bank account to their United States account, which held only a small sum. For unknown reasons, the transfer did not go through. On the afternoon of the due date, the Thomases' counsel informed the Neighbors' counsel that the Thomases were working to rectify the problem, but the payment might be delayed. And that did end up being the case, with the Neighbors' counsel receiving the first installment payment four days late.

¶7        Almost immediately after receiving the untimely payment, the Neighbors moved the court to enter the "pocket judgment" under Arizona Rule of Civil Procedure 54(c) in the amount of $200,000 (300% of the $50,000 unpaid on the Settlement Amount). Over the Thomases' objection, the court summarily entered the requested judgment along with the permanent injunction contemplated by the Settlement Agreement. The Thomases appealed.

## JURISDICTION

¶8        The Neighbors challenge our appellate jurisdiction. They contend that the judgment is not appealable because the Settlement

Agreement directed "any dispute . . . regarding these Settlement Terms" to be submitted to the judge assigned to the litigation as "Arbitrator" for "a binding, non-appealable determination."

**¶9** But neither party invoked the arbitration clause in the superior court. To start, the Neighbors moved the court to enter a procedurally appealable judgment consistent with the Settlement Agreement's provision that "the court will retain jurisdiction to enter the pocket judgment." *See Brummett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 427-28, ¶ 12 (App. 2016) (holding that a judgment entered under Arizona Rule of Civil Procedure 54(c) is procedurally appealable); *Major v. Coleman*, 251 Ariz. 345, 349, ¶ 15 (App. 2021) (holding that the court may retain jurisdiction to enforce settlement agreements upon the parties' stipulation). The Thomases then challenged the enforceability of the "pocket judgment" provision. By so doing, the Thomases raised a "dispute . . . regarding these Settlement Terms" within the meaning of the arbitration clause. But the Thomases did not request arbitration. Nor did the Neighbors in their reply. In fact, no party addressed arbitration until this appeal.

**¶10** Parties may waive their right to arbitration by "conduct that clearly warrants inference of an intentional relinquishment" of the right. *Meineke v. Twin City Fire Ins. Co.*, 181 Ariz. 576, 581 (App. 2009). "[P]articipat[ing] substantially in litigation without promptly seeking an order from the court compelling arbitration" constitutes waiver. *Russo v. Barger*, 239 Ariz. 100, 103-04, ¶ 15 (App. 2016) (citation omitted). On this record, we hold that the parties waived binding arbitration and submitted to the superior court's resolution of the dispute by an appealable judgment.

**¶11** The Thomases properly and timely appealed from the judgment. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).

## DISCUSSION

**¶12** The Thomases contend that the judgment was based on an unenforceable penalty term in the Settlement Agreement. The Neighbors respond that the Settlement Agreement lawfully authorized the judgment's entry as one of several alternative-performance options. And if not, the Neighbors argue, the judgment resulted from an enforceable liquidated-damages provision. We review the superior court's summary enforcement of the "pocket judgment" provision de novo, viewing the facts in the light

most favorable to the Thomases. *Robertson v. Alling*, 237 Ariz. 345, 347, ¶ 8 (2015).

**¶13** Parties may lawfully agree to an alternative-performance contract that gives the promisor a "reasonably certain" choice "in the manner of performance." *Golder v. Crain*, 7 Ariz. App. 207, 209-10 (App. 1968); *see also Clayton v. Commc'ns. Capital Corp.*, 7 Ariz. App. 449, 454 (App. 1968). A lawful option may take the form of an onerous fixed-sum payment. 22 Am. Jur. 2d Damages § 538. But because the purpose of an alternative-performance contract is to ensure a performance, not prescribe a remedy for a breach, the parties must "intend to give a real option to the performing party and [must] not intend for one of the options to function as a device to assure performance of the other option." 22 Am. Jur. 2d Damages § 503; *see also* 24 Williston on Contracts § 65:7 (4th ed.).

**¶14** The determinative inquiry, regardless of the parties' choice of words, is whether the promisor is given "a real choice between reasonably equivalent choices." 22 Am. Jur. 2d Damages § 538. If, at the time of contracting, the value of a fixed-sum payment option is "so disproportionate as to be unequal" to the value of the promisor's other "choice" of performance, the contract does not actually authorize alternative performances—it instead prescribes either liquidated damages or a penalty. *Id.*; *see also* Restatement (Second) of Contracts § 356, cmt. c (1981) ("In determining whether a contract is one for alternative performances, the relative value of the alternatives may be decisive.").

**¶15** Liquidated damages represent a pre-agreed remedy for breach. *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 110, ¶ 8 (2017). Liquidated damages are beneficial when actual damages would be difficult to quantify, because they give parties certainty and allow them to avoid litigation expenses. *Id.*; *Pima Savs. & Loan Ass'n v. Rampello*, 168 Ariz. 297, 299 (App. 1991). But parties cannot lawfully contract for a penalty because the purpose of contract remedies is to compensate, not to punish. *Pima Savs. & Loan*, 168 Ariz. at 299.

**¶16** Whether a contract prescribes liquidated damages or a penalty is a question of law for the court. *Id.* at 300. There is no bright-line rule—the court must construe the contract in the light of the circumstances of the case. *Dobson Bay*, 242 Ariz. at 112, ¶ 17. The inquiry is guided by whether the stipulated sum "is reasonable in the light of [1] the anticipated or actual loss caused by the breach and [2] the difficulties of proof of loss." *Id.* at 111, ¶ 12 (quoting Restatement (Second) of Contracts § 356(1)). The court must consider the relative strengths of both factors, *Dobson Bay*, 242

Ariz. at 111, ¶ 12, to determine whether the stipulated sum "is so unreasonably large as to be a penalty," Restatement (Second) of Contracts § 356(1), cmt. b. If the difficulty of proof of loss is great at the time of contracting, "considerable latitude is allowed in the approximation of anticipated or actual harm." *Dobson Bay*, 242 Ariz. at 111, ¶ 12 (quoting Restatement (Second) of Contracts § 356(1), cmt. b); *Tortolita Veterinary Servs., PC v. Rodden*, 252 Ariz. 96, 101, ¶ 11 (App. 2021).

**¶17** Conversely, if "the difficulty of proof of loss is slight, less latitude is allowed in th[e] approximation" of harm. *Dobson Bay*, 242 Ariz. at 111, ¶ 12 (quoting Restatement (Second) of Contracts § 356(1), cmt. b). "[I]f the difficulty of proof of loss is slight and either no loss occurs or the stipulated sum is grossly disproportionate to the loss, the parties' stipulation [is] unreasonable and therefore unenforceable as a penalty." *Id.* at ¶ 14.

> I. The Settlement Agreement's "pocket judgment" provision did not describe an alternative-performance option.

**¶18** The Neighbors first contend that the Settlement Agreement's "pocket judgment" provision describes an alternative-performance option that the parties negotiated to address the Neighbors' concerns about collecting unpaid portions of the Settlement Amount if the Thomases sold the Property, their only significant domestic asset. The Thomases disputed that the Neighbors ever expressed concern about untimely payments. Regardless whether the Settlement Agreement was negotiated in view of collection concerns, we hold that the "pocket judgment" provision did not describe an alternative-performance option because it was not reasonably equivalent to the Thomases' payment of the settlement sum.

**¶19** The parties agreed the Thomases would pay a "Settlement Amount" of $75,000 either in installments on a schedule, or as a lump sum (to the extent unpaid under the installment schedule) if the Thomases sold the Property. Those provisions described alternative performances because they set forth reasonably equivalent options: the Thomases could keep the Property and pay a sum over time, or they could liquidate the Property and pay the same sum earlier. The provisions also acknowledged the Neighbors' alleged collection concerns by tying the payment acceleration to the Thomases' potential sale of the Property.

**¶20** The "pocket judgment" provision also protected the Neighbors. But it did not do so by describing an alternative performance. The "pocket judgment" provision required the Thomases to pay 300% of

any unpaid portion of the Settlement Amount. On its face, this provision did not provide the Thomases a realistic option. It was in no way reasonably equivalent to the payment of the Settlement Amount on any schedule. Based on its potential comparative value alone, the "pocket judgment" provision was not an alternative performance, but was instead a device designed to compel the Thomases to pay the Settlement Amount. The language of the Settlement Agreement, though not controlling, also supports this conclusion. First, the agreement describes the "pocket judgment" as "secur[ity]" for the Settlement Amount instead of as an alternative to paying the Settlement Amount. Second, the agreement defines the value of the "pocket judgment" as a "customary amount" rather than tying it to any facts. The "pocket judgment" was not an alternative-performance option.

II.    The Settlement Agreement's "pocket judgment" provision imposed a penalty.

¶21    The Neighbors next contend that even if the "pocket judgment" provision did not describe an alternative performance, it described liquidated damages. We disagree.

¶22    The Neighbors argue that when the parties entered the Settlement Agreement, damages for the Thomases' failure to pay the Settlement Amount were difficult to estimate given the unique, hard-to-calculate judgment-enforcement risk created by the Thomases' move to Canada and their efforts to sell their only significant domestic asset. But, again, not only did the Settlement Agreement substantially increase the Neighbors' potential recovery, it also expressly tied that increase to a so-called "customary" multiplier—not to the facts of the case. Although the Neighbors later provided a website printout describing typical judgment-enforcement costs in Canada, the printout was prepared post-breach and the Neighbors did not assert that they relied on the website or any other source when contracting. Further, the "pocket judgment" provision's use of a multiplier applied to unpaid amounts—rather than an addend applied to the Settlement Amount—belies the Neighbors' argument that the provision was premised on anticipated enforcement costs, because the cost of enforcing a judgment would not vary based on the amount of the judgment.

¶23    On this record, we cannot say that the "pocket judgment" was premised on a reasonable approximation of the Neighbors' loss for a breach, even if anticipated enforcement costs made the loss difficult to calculate. Nor can we say that the stipulated amount was reasonable given

7

the Neighbors' actual loss incurred from receiving the first installment payment four days late. The "pocket judgment" was an unenforceable penalty. The balance of the Settlement Agreement, however, remains intact. *See Dobson Bay*, 242 Ariz. at 110, ¶ 9.

**¶24** We vacate the superior court's entry of judgment because it was premised not on an alternative-performance option, but rather on an unenforceable penalty for a breach. Nothing in our decision precludes the Neighbors from pursuing damages for the breach, though we note that any damages may be mitigated by their acceptance of the untimely installment payment and their alleged acceptance during this appeal of the balance due on the Settlement Amount.

## CONCLUSION

**¶25** We vacate the superior court's entry of judgment. In our discretion, we deny the parties' competing requests for attorneys' fees under A.R.S. §§ 12-341.01 and -349. The Thomases are entitled to recover their costs on appeal under A.R.S. § 12-341 upon their compliance with Arizona Rule of Civil Appellate Procedure 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:              JR